**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| WANDA MARDIS *et al.*,<br><br>              Plaintiffs,<br><br>v.<br><br>JACKSON HEWITT *et al.*,<br><br>              Defendants. | Civil Action No. 2:16-cv-02115 (JLL) (JAD)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendants' Motion to Dismiss (ECF No. 35, "Defs.' Mot. Dismiss") Plaintiffs' Amended Class Action Complaint (ECF No. 29, "Am. Compl.") pursuant to Federal Rule of Civil Procedure 12 (b)(6). The Court has considered the submissions of the parties in support of and in opposition to the instant motion, and decides this matter without oral argument in accordance with Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' Motion to Dismiss is granted in part and denied in part. Plaintiffs may file a Second Amended Complaint that cures the pleading deficiencies discussed herein.

## I.   JURISDICTION AND VENUE

The Court's subject matter jurisdiction over this matter is premised on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332 (d)(2), as the amount in controversy exceeds

$5,000,000 exclusive of costs and interest, at least one Class member is a citizen of a different state from Defendants[1], and there are more than 100 Class Members.  28 U.S.C. § 1332 (d). Venue is proper under 28 U.S.C. § 1391 (b)[2]. Defendants have not challenged the factual contentions of the Plaintiffs' jurisdictional assertions, which on their face appear to meet the requirements of the statutes.

## II.    FACTUAL BACKGROUND[3]

Plaintiffs initiated this putative Class Action on April 15, 2016, which arises from the purported reduction in commissions paid by Defendants to Plaintiffs in return for their employment services as tax preparers for the 2013-2014, 2014-2015, and 2015-2016 tax seasons. *See generally* Am. Compl.

### A.  The Parties

Putatively representing a class consisting of current or former employees of Defendants, Named Plaintiffs Wanda Mardis, Kim Alexander, Cecilia Morris, Karla Dozier, Sheila Baker, Sandra Coleman, Katrina Corbitt, Lenel Nichols, Jacqueline Knight, Amy Donaldson, Sonja Niemeyer, Terry Meyer, Catherine Dickerson, Carol Scott, Amanda Disotell, Elaine Fernandez, Jessica Gay, Christina Babineaux, Brenda Boyd and LaDonna Washington (collectively

---

[1] Defendants JHTSI, JHI and TSA are all organized under the laws of Delaware with principal places of business in Parsippany, New Jersey. Id. ¶ 21 - 23.  JHTSI and JHI do business in all 50 states while TSA does business in at least 28 states.  Id.  Furthermore, Plaintiffs contend that JHI and TSA are both subsidiary corporations of Defendant JHTSI and that The Unknown Franchisees 1-100 are organized under the various laws of the 50 states. Id. ¶¶ 22- 24.
[2] Defendants JHTSI, JHI and TSA are headquartered in New Jersey and also reside in the judicial district.
[3] At this stage in the litigation, the factual assertions in Plaintiffs' Amended Complaint are assumed to be true for purposes of motion practice. Without converting the instant motion into a motion for summary judgment, the Court may consider documents that are integral to or explicitly relied upon in the Amended Complaint.  *In re Burlington Coat Factory Sec. Litig.*, 114 F. 3d 1410, 1426 (3d Cir. 1997).

hereinafter "Named Plaintiffs") bring this action against Defendants individually and on behalf of all other similarly situated (collectively hereinafter "Plaintiffs").  Am. Compl. ¶¶ 1-20.

Defendants include Jackson Hewitt Tax Service, Inc., ("JHTSI"), Jackson Hewitt, Inc., ("JHI"), Tax Services of America, Inc., ("TSA"), and Unknown Franchisees 1-100 ("Franchisees" or "Franchisee")(hereinafter collectively "Defendants").  Doing business as Jackson Hewitt, Defendants collectively provide tax preparation services to Americans seeking to file their income taxes with the federal government and governments of their respective state governments. Am. Compl. ¶ 29.   Throughout a network of over 6,300 locations nationwide, Jackson Hewitt is the second largest full-service tax preparation business in the United States with franchised and company-owned office locations throughout the country. Id. ¶ 30.   JHI and TSA are subsidiaries corporations of parent corporation JHTSI. Id.   Furthermore, the Amended Complaint asserts that JHTSI and/or JHI operate though a tightly controlled system of franchisees. Id.  Of the Franchisees, TSA is the largest, directly operating approximately 20% of the locations operating under the name "Jackson Hewitt" while the rest of the locations are run by other franchisees. Id.

With that being said, the Named Plaintiff tax preparers fall within a group consisting of either Plaintiffs, of whom, were previously or are currently employed by TSA, *i.e.* the "TSA Employees Plaintiffs" or Plaintiffs that were previously employed by a Franchisee, *i.e.* the "Franchisee Employee Plaintiffs."  As set forth in the Amended Complaint, Plaintiffs Mardis, Alexander, Morris, Dozier, Baker, Coleman, Fernandez, Gay and Boyd (collectively "TSA Employees Plaintiffs") assert they were previously or are currently jointly employed by TSA, JHI and JHTSI. Am. Compl. ¶¶ 1-6; 16-7; 19. Accordingly, Plaintiffs Corbitt, Nichols, Knight, Donaldson, Niemeyer, Meyer, Dickerson, Scott, Babineaux, and Washington (collectively

"Franchisee Employee Plaintiffs") claim to have previously been jointly employed by a Franchisee, JHI and JHTSI. Id. ¶¶ 9-15; 20.

**B.**  <u>**Allegations Common to all Plaintiffs**</u>

At the beginning of each tax season, Defendants employ teams of tax preparers, such as the Plaintiffs, to draft and file clients' income tax returns. Id. ¶ 63.  The tax preparers' term of employment runs for the length of the year's tax season. Id.  Before the tax season begins, the tax preparers are presented with a commission-based compensation plan, which is based upon the revenues generated by each individual tax preparer.  Id. ¶ 64.

The Commission Plan

Under the sales commission plan provided to the employees of JHTSI, JHI and TSA, employees receive a percentage of the net revenues the tax preparer employee generates for the Defendants.  Id. ¶ 37.  As provided by Plaintiffs' Amended Complaint, the Commission Plan defines net revenues as follows:

> • Five percent (5%) of the fees charged separately and received by the Company, less applicable premium fees for sale of TSA's Gold Guarantee program.  If the Gold Guarantee fee is inclusive in the base price of the tax return, the preparer will not receive an additional compensation beyond their stated percentage of tax preparation volume; and

> • 59% of your Net Revenues. For the purposes of this Plan, the term "Your Net Revenues" shall mean the total net amount of tax preparation fees received by TSA for all individual income tax returns prepared by you through TSA's tax preparation and processing systems during the 2014 Tax Season.  By way of example only and without limitation, Your Net Revenues shall be net of (and reduced to reflect) (i) any applicable sales, use of similar taxes, (ii) any unfunded financial product payments; and (iv) any tax preparation fees charged to customers in connection with the preparation and processing of fraudulent individual income tax returns.

Id. ¶ 36, Ex. 1 (the "Commission Plan").   Per the Commission Plan, once a tax preparer's revenue reaches a certain threshold, they receive a commission based upon their net revenue. Id. For all Plaintiffs, commissions are based on the net revenue generated by each individual Plaintiff.   Id. ¶ 38.

The Gift Card Promotion

At the beginning of the 2013-2014 tax season, in an effort to incentivize a specific customer base to employ their tax filing services and generate new business, Defendants implemented a prepaid gift card promotion (the "Gift Card Promotion") by which JHI and/or JHTSI allegedly instructed tax preparers at TSA and franchisee locations to provide a $50 to $100 gift card to customers that utilize the company's tax filing services at a location doing business as Jackson Hewitt. Id. ¶ 39.   Plaintiffs claim that they did not have discretion as to whether or not to hand out a gift card but rather were required by JHI and/or JHTSI to distribute the gift cards. Id. ¶ 40.   In accordance with the Gift Card Promotion, Plaintiffs assert that millions of gift cards were provided to customers.  Id.

At the end of the 2013-2014 tax season, Plaintiffs contend that each received substantially lower commissions than that of which they were entitled. Id. ¶ 42.  Plaintiffs assert that they did not receive what they were due under the Commission Plan because Defendants deducted the value of the Gift Card Promotion from the net revenue earned by each Plaintiff. Id. As mentioned, under the Commission Plan, the net revenue equals the gross profit minus the cost of sale. Id.

For the following 2014-2015 tax season, JHI, JHTSI and/or TSA revised the Commission Plan.  Id. ¶ 43.  The Revised Commission Plan as provided by Plaintiff Mardis, reflects the following:

5

- The following commission structure will be paid in accordance with the above referenced offer of employment.  Commissions are paid on net received revenue, determined as fees charged separately and received by the Company, less applicable premium fees for sale of TSA's Gold Guarantee program and any promotional programs, *such as the $50 Gift Card program*.  If the Gold Guarantee fee is inclusive in the base price of the tax return, the preparer will not receive an additional compensation beyond their stated percentage of tax preparation.  This commission structure applies to the total net amount of tax preparation fees received by TSA for all individual income tax returns prepared by you through TSA's tax preparation and processing systems during the 2015 Tax Season.

- Additionally, your Net Revenues shall be net of (and reduced to reflect) (i) any applicable sales, use or similar taxes, (ii) any unfunded financial product payments; and (iv) any tax preparations fees charged to customers in connection with the preparation and processing of fraudulent individual income tax returns.

Id. ¶ 43, Ex. 2 ("Revised Mardis Commission Plan").  Plaintiffs contend that at the end of the 2014-2015 tax season, Defendants reduced the costs of the gift cards from the net revenues earned by the Plaintiffs which again resulted in a lower commission payment to each Plaintiff. Id. ¶ 46.  Subsequently for the 2015-2016 tax season, Plaintiffs assert that similar to the 2013-2014 and 2014-2015 tax seasons, Defendants deducted the cost of the Gift Card Promotion from the net revenues Plaintiffs earned again resulting in lower commission payments to each individual Plaintiff.  Id. ¶ 46.  Due to said reduction, Plaintiffs argue TSA and franchisees breached their contracts with Plaintiffs, JHTSI and JHI have been unjustly enriched and JHI and/or JHTSI and TSA and JHI and/or JHTSI and the Franchisees have violated the wage and hour laws of the various State Sub-Classes. Id. ¶ 47.

## C. Individual Plaintiff Allegations

With respect to Named Plaintiffs, the Amended Complaint sets forth the following specific factual allegations.

*Plaintiff Mardis*

6

Plaintiff Wanda Mardis claims that she was jointly employed by JHI and/or JHTSI and TSA for thirteen years in the Commonwealth of Kentucky. Id. ¶ 92.  In the 2013-2014 tax season, Ms. Mardis purports to have signed an agreement indicating her rate as reflected above in the Commission Plan and the Revised Commission Plan.  Id. ¶ 93.  Under the Commission Plan for the 2013-2014 tax season, Ms. Mardis contends her commission was to be paid in the amount of 59% of the net revenues she generated, once those revenues began to exceed her aggregate wage.  Id. ¶ 94, Ex. 1 & 2.    Id. ¶ 96.  Ms. Mardis further alleges that in total she prepared 515 tax returns, which amounted to $191,480.00 in revenues.  Id., Ex. 8.  Furthermore, Ms. Mardis contends that during the 2013-2014 tax season, she distributed hundreds of gift cards as it was mandated by JHI and/or JHTSI and allegedly implemented through TSA. Id. ¶ 97.  At the end of the 2013-2014 tax season, Ms. Mardis claims that she was paid only a portion of her commissions by TSA because "unbeknownst, to Plaintiff Mardis JHI and/or JHTSI had deducted the Gift Card Promotion costs from her commissions." Id. ¶ 98.   Ms Mardis contends not to have agreed to said deduction.  Id.

The following 2014-2015 tax season Ms. Mardis asserts that she was presented with a revised commission plan which included the following amendment: "commissions are paid on net received revenue, determined as fees charged separately and received by the Company, less applicable premium fees for the sale of TSA's Gold Guarantee program and any promotional programs, *such as the $50 Gift Card program*." Id. ¶ 99.  The Amended Complaint alleges that during the 2014-2015 tax season, Ms. Mardis exceeded her aggregate wage and earned commissions, however, the Amended Complaint continues to allege that at the end of the 2014-2015 tax season, "Ms. Mardis was paid commissions by TSA that, again, had been reduced by

7

the cost associated with the gift cards she was forced by JHTSI and/or JHI by and through TSA to give to customers pursuant to the Gift Card Promotion." Id. ¶¶ 100, 101.

### *Plaintiff Alexander*

Plaintiff Kim Alexander maintains that she was jointly employed by JHI and/or JHTSI and TSA for fourteen years and worked in the Commonwealth of Kentucky for the entirety of those years. Id. ¶ 102. In the 2013-2014 tax season, Ms. Alexander alleges that she was entitled to 57% of the net revenues she generated once said revenues began to exceed her aggregate wage. Id. ¶ 103. The Amended Complaint asserts that Ms. Alexander prepared a total of 486 tax returns for the 2013-2014 tax season, representing $168,227.00 in revenues. Id., Ex. 8. Furthermore, Ms. Alexander contends that, during the 2013-2014 tax season, her sales exceeded her aggregate wage thereby earning her a commission and also that she distributed several hundred gift cards in the 2013-2014 tax season. Id. ¶¶ 104, 105. At the end of said tax season, Ms. Alexander claims that she was paid a portion of her commissions because JHI and/or JHI subtracted the Gift Card Promotion costs from her wages. Id. ¶ 106. Ms. Alexander purports not to have agreed the deduction at issue. Id. Thereafter in the 2014-2015 tax season, Plaintiff Alexander asserts that she was presented with an amended commission plan which was nearly identical to the Revised Mardis Commission Plan. Id. ¶ 107. During the 2014-2015 tax season, Ms. Alexander claims that she exceeded her aggregate wage and again earned commissions, but "was paid commission by TSA that, again had been reduced by the cost associated with the gift cards she was forced to give to customers pursuant to the Gift Card Promotion." Id. ¶ 109.

### *Plaintiff Morris*

Plaintiff Cecilia Morris asserts that for thirteen years she was jointly employed by JHI and/or JHTSI and TSA as a tax preparer in the Commonwealth of Kentucky. Id. ¶¶ 110, 111. In

8

the 2013-2014 tax season, Ms. Morris contends that her commission was to equal 5% of the net revenues from every tax return that Ms. Morris had prepared. Id. ¶ 112.   Ms. Morris asserts that after the 2013-2014 tax season, during which she distributed gift cards as required by the Gift Card Promotion, she was paid only a portion of the commissions in which she was entitled since JHI and/or JHTSI and TSA deducted from her wages the cost associated with the aforementioned promotion. Id. ¶¶ 113, 114.   Again, after the 2014-2015 tax season, Ms. Morris qualified to earn commissions, she contends however, that as a result of being required to hand out gift cards pursuant to the Gift Card Promotion, she was paid a portion of the commissions that of which she was entitled because the cost of the Gift Card Promotion was deducted from her wages. Id. ¶¶ 115, 116.

### *Plaintiff Dozier*

Plaintiff Karla Dozier states to have been jointly employed as a tax preparer by JHI and/or JHTSI and TSA for four years in the Commonwealth of Kentucky.  Id. ¶ 119.  Ms. Dozier claims that in the 2013-2014 tax season, she was to be paid a commission in the amount of 9% of the net revenues she generated once those revenues began to exceed her aggregate wage. Id. ¶ 120.  Furthermore, during the 2013-2014 tax season, Ms. Dozier purports to have prepared in total 165 tax returns, which amounted to $54,611.00 in revenues. Id., Ex. 8.  The Amended Complaint asserts that the net revenues were defined "by her commission plan which was nearly identical to the Commission Plan." Id. ¶ 121.  Ms. Dozier alleges that during the 2013-2014 tax season, her sales exceeded her aggregate wage and she earned commissions. Id. ¶ 122.  Ms. Dozier further claims that at the end of the 2013-2014 tax season, she was paid a portion of her commissions because "unbeknownst to Ms. Dozier, JHI and/or JHTSI and TSA had deducted the Gift Card Promotion costs from her wages.  At that time, Ms. Dozier was never advised of this

9

deduction nor did she agree to it." Id. ¶ 123.  In the 2014-2015 tax season, Ms. Dozier contends that she was presented with an amended commission plan which was nearly identical to the Revised Mardis Commission Plan. Id. ¶ 124.   For the period of the 2014-2015 tax season, Ms. Dozier exceeded her aggregate wage and therefore earned a commission, however Ms. Dozier claims that she was paid only a portion of her commissions. Id. ¶ 125.

*Plaintiff Baker*

Plaintiff Sheila Baker claims that she was jointly employed by JHI and/or JHTSI and TSA for nine years in the Commonwealth of Kentucky for each of those years. Id. ¶ 127.  In the 2013-2014 tax season, Ms. Baker asserts that under her commission plan, she was to be paid, as a commission, a percentage of each tax return she prepared after her sales reached $5,000. Id. ¶ 128. Ms. Baker asserts that, during the 2013-2014 tax season, her sales exceeded $5,000 and she earned commissions.  Id. ¶ 129.  During the 2013-2014 tax season, Ms. Baker also claims that she distributed roughly 100 gift cards pursuant to the Gift Card Promotion.  Id. ¶ 130.   At the end of the 2013-2014 tax season, Ms. Baker asserts that she was paid a portion of her commissions since unbeknownst to her, JHI and/or JHTSI had deducted from her wages the cost associated with the gift cards that she was allegedly forced to give out pursuant to the Gift Card Promotion.  Id. ¶ 131.

*Plaintiff Coleman*

Plaintiff Sandra Coleman states that she was jointly employed by JHI and/or JHTSI and TSA in the Commonwealth of Kentucky. Id. ¶ 132.  In the 2013-2014 tax season, Ms. Coleman contends that, as a commission, she was to be paid 35% of the net revenues she generated once those revenues began to exceed her aggregate wage. Id.  ¶ 133.   Furthermore, Ms. Coleman asserts that she prepared 320 tax returns, which represented $105,565.00 in revenues. Id. ¶ 134,

Ex. 8.  For the purposes of Ms. Coleman's commissions, during the 2013-2014 tax season, Ms. Coleman asserts that net revenues were defined by her commission plan. Id. ¶ 135.  During the 2013-2014 tax season, Ms. Coleman's sales exceeded her aggregate wage and she purportedly earned commissions. Id. ¶ 136.  Furthermore, Ms. Coleman contends that she distributed several hundred gift cards. Id. ¶ 137.  At the end of the 2013-2014 tax season, Ms. Coleman avers that she was paid a portion of her commissions and that unbeknownst to her, JHI and/or JHTSI and TSA had deducted the Gift Card Promotion costs from her wages. Id. ¶ 138.  Ms. Coleman further asserts that she did not agree to this deduction.  Id.  Thereafter in the 2014-2015 tax season, Ms. Coleman was presented with a revised commission plan. Id. ¶ 139.  During the 2014-2015 tax season, Ms. Coleman claims that she exceeded her aggregate wage and again earned commissions. Id. ¶ 140.  At the end of the 2014-2015 tax season, Ms. Coleman alleges that she was paid commissions by TSA which, again, had been reduced by the cost associated with the gift cards she claims she was forced to distributed to customers pursuant to the Gift Card Promotion. Id. ¶ 141.

### *Plaintiff Corbitt*

Plaintiff Katrina Corbitt alleges to have been jointly employed as a tax preparer by JHI and/or JHTSI and a Franchisee in the state of Illinois for six years. Id. ¶ 142.  For the 2013-2014 tax season, Ms. Corbitt asserts that her commission plan set forth that she would receive 5% of the net revenues that she generated as her commission. Id. ¶ 143.  Also, in the 2013-2014 tax season, Ms. Corbitt contends that her franchise owner ran the Gift Card Promotion implemented by JHI and/or JHTSI which required her to provide eligible customers with $50-$100 prepaid gift cards.  Id. ¶ 144.  Ms. Corbitt claims that during the 2013-2014 tax season, she distributed an unknown number of gift cards pursuant to the Gift Card Promotion. Id. ¶ 144.  At the

conclusion of the 2013-2014 tax season, Ms. Corbitt alleges that JHI and/or JHTSI had deducted from her wages the cost of the gift card promotion and therefore the amount she was paid in commissions was less than that of which she was entitled. Id. ¶ 146.

*Plaintiff Nichols*

Plaintiff Lenel Nichols was a Franchisee from 2011 until early April 2016 in the state of Tennessee. Id. ¶ 147.  For the 2013-2014 tax season, Ms. Nichols contends that she entered into and signed an agreement indicating her rate of pay and that she was to be paid a percentage of the net revenues she generates once those commissions exceeded her aggregate wage. Id. ¶ 149, Ex. 10.  At the end of the 2013-2014 tax season, Ms. Nichols alleges that she was paid only a portion of the commissions of which she was entitled. Id. ¶ 152.  Ms. Nichols purports that the reduction in her commission was due to the fact that her Franchisee had deducted the cost associated with the gifts cards that she was required to distribute from her wages.   Id. Furthermore, Ms. Nichols asserts that she has continued to work for JHI and/or JHTSI from 2011 until early April 2016 and as set forth by the Gift Card Promotion she has been required to hand out gift cards for every tax season since the 2013-2014 tax season.  Id. ¶ 153.

*Plaintiff Knight*

Plaintiff Jacqueline Knight asserts that she was jointly employed by JHI and/or JHTSI through a franchisee in the state of New Jersey from 2009 through 2016. Id. ¶ 154. Ms. Knight contends that she entered into and signed an agreement indicating her rate of pay each year and that for the 2013-2014, 2014-2015, and 2015-2016 tax seasons she was to be paid a percentage of the net revenues she generated once those commissions exceeded her aggregate wage. Id. ¶ ¶ 155, 156.  Furthermore, Ms. Knight contends that for the foregoing tax seasons, Plaintiff Knight's franchise ran the Gift Promotion JHI and JHTSI implemented during which Ms. Knight

12

was required to provide customers who qualified for the Gift Card Promotion with a $50-$100 prepaid gift card and pursuant to the Gift Card Promotion, Ms. Knight contends that she distributed an unknown number of gift cards. Id. ¶¶ 157, 158.  At the end of the 2013-2014, 2014-2015 and 2015-2016 tax seasons, Ms. Knight was allegedly paid only a portion of her commissions and unbeknownst to Ms. Knight, JHI and JHTSI and her Franchisee deducted from her wages the cost associated with the gift cards that she was "forced to give out pursuant to the Gift Card Promotion." Id. ¶ 159.  Furthermore, Ms, Knight asserts that she "did not authorize this deduction and was not advised her commission would be lowered by the cost of the Gift Card Promotion." Id.

### *Plaintiff Donaldson*

Plaintiff Amy Donaldson was jointly employed by JHI and/or JHTSI and TSA in the Commonwealth of Pennsylvania from approximately 2007 through 2016.  Id. ¶ 160.    The Amended Complaint states that Ms. Donaldson entered into and signed an agreement indicating her rate of pay each year and that for the 2013-2014, 2014-2015, and 2015-2016 tax seasons Ms. Donaldson was to be paid a percentage of the net revenues she generated once those commissions exceeded her aggregate wage. Id. ¶ 162.  In the 2013-2014, 2014-2015 and 2015-2016 tax seasons, Ms. Donaldson's store ran the Gift Card Promotion implemented by JHI and/or JHTSI during which Ms. Donaldson was required to provide a $50-$100 prepaid gift card to eligible customers. Id. ¶ 163.  Ms. Donaldson prepared tax returns for the 2013-2014, 2014-2015 and 2015-2016 tax seasons and distributed an unknown number of gift cards as set forth by the Gift Card Promotion. Id. ¶ 164.  At the end of the 2013-2014, 2014-2015, and 2015-2016 tax seasons, Ms. Donaldson asserts that she was paid a portion of her commissions.   Allegedly unbeknownst to Ms. Donaldson, JHI and/or JHTSI and TSA had deducted from her wages the

cost associated with gift cards she was forced to give out pursuant to the Gift Card Promotion. Ms. Donaldson avers that she did not authorize this deduction and was not advised her commissions would be lowered by the cost of the gift cards. Id. ¶ 165.

### *Plaintiffs Niemeyer, Meyer and Dickerson*

Plaintiffs Sonja Niemeyer, Terry Meyer, and Catherine Dickerson were allegedly jointly employed by JHI and/or JHTSI and a Franchisee in the State of California, 2014 through 2015, 2007 through 2015 and, 2005 through March 2016, respectively. Id. ¶¶ 166, 172, 178. Furthermore, Ms. Niemeyer, Ms. Meyer and Ms. Dickerson each contend that they entered into and signed an agreement indicating their rate of pay for each year and for the 2013-2014, 2014-2015 and 2015-2016 tax seasons, each was to be paid a percentage of the net revenues she generated once those commissions exceeded her aggregate wage. Id. ¶¶ 1168, 169, 173, 174, 179, 180. During the aforementioned tax seasons, Ms. Niemeyer, Ms. Meyer and Ms. Dickerson's franchisees all executed the Gift Card Promotion implemented by JHI and/or JHTSI during which Ms. Niemeyer, Ms. Meyer and Ms. Dickerson provided qualifying customers with a $50-$100 gift prepaid card. Id. ¶¶ 169, 175, 181. Ms. Niemeyer, Ms. Meyer and Ms. Dickerson all purport that during the 2013-2014, 2014-2015 and 2015-2016 tax seasons, each prepared tax returns and distributed an unknown number of gift cards pursuant to the Gift Card Promotion. Id. ¶¶ 170, 176, 182. At the end of the each tax season, Ms. Niemeyer, Ms. Meyer and Ms. Dickerson allege that they were paid a portion of their commissions as JHI and/or JHTSI and their respective franchisees had deducted the cost of the gift cards from their wages. Id. ¶¶ 171, 177, 183. Ms. Niemeyer, Ms. Meyer and Ms. Dickerson contend that they did not authorize said deduction nor were they advised that their commissions would be lowered by the cost of the Gift Card Promotion. Id. ¶¶ 171, 177, 183.

*Plaintiff Scott*

Plaintiff Carol Scott contends that from 2004 through April 2014 she was jointly employed by JHI and/or JHTSI and a Franchisee in the State of South Carolina. Id. ¶ 184.  Ms. Scott asserts that she entered into and signed an agreement indicating her rate of pay for 2014 and further asserts that for the 2013-2014 tax season, she was to be paid a percentage of the net revenues she generated once those commissions exceeded her aggregate wage.  Id. ¶¶ 185, 186. Ms. Scott contends that for the aforementioned tax season, her Franchisee required her to provide qualified customers with $50-$100 prepaid gift cards pursuant to the Gift Card Promotion and as a result Ms. Scott distributed an unknown number of gift cards.  Id. ¶¶ 187, 188.   At the conclusion of the 2013-2014 tax season, Ms. Scott alleges that she was paid a portion of her commission as JHI and/or JHTSI and her Franchisee had deducted from her wages the cost associated with the gift cards she was required to hand out.   Id. ¶ 189.   Lastly, Ms. Scott contends that she did not authorize this deduction and was not advised that her commissions would be lowered by the cost of the Gift Card Promotion. Id.

*Plaintiff Disotell*

Plaintiff Amanda Disotell alleges that she was jointly employed by JHI and/or JHTSI and TSA in the State of Florida from approximately 2012 through 2015. Id. ¶ 190.  Ms. Disotell asserts that she entered into and signed an agreement indicating her rate of pay for each year. Id. ¶ 191.  For the 2013-2014 and 2014-2015 tax seasons, Ms. Disotell contends that she was to be paid a percentage of the net revenues she generated once those commissions exceeded her aggregate wage.  Id. ¶ 192.  In the 2013-2014 and 2014-2015 tax seasons, Ms. Disotell asserts that her store ran the Gift Card Promotion JHI and/or JHTSI implemented during which Ms. Disotell was required to provide customers who qualified for the Gift Card Promotion with a

$50-$100 prepaid gift card. Id. ¶ 193.   During the 2013-2014 and 2014-2015 tax seasons, Ms. Disotell prepared tax returns and distributed an unknown number of gift cards pursuant to the Gift Card Promotion. Id. ¶ 194.   At the end of the 2013-2014 and 2014-2015 tax seasons, Ms. Disotell alleges that she was paid a portion of her commissions since JHI and/or JHTSI and TSA had deducted from her wages the cost associated with gift cards she claims she was required to distribute pursuant to the Gift Card Promotion. Id. ¶ 195.   Additionally, Ms. Disotell asserts that she did not authorize this deduction and that she was not advised her commissions would be lowered by the cost of the Gift Card Promotion.  Id.

### Plaintiffs Fernandez and Gay

Plaintiffs Elaine Fernandez and Jessica Gay assert that they were jointly employed by JHI and/or JHTSI and TSA in the State of Texas from approximately 2008 through 2016, and, 2001 through 2016, respectively.  Id. ¶¶ 196, 202.  Ms. Fernandez and Ms. Gay assert that they both entered into and signed an agreement indicating their rate of pay for each year. Id. ¶¶ 197, 203. For the 2013-2014 and 2014-2015 tax seasons, Ms. Fernandez and Ms. Gay contend that they were to be paid a percentage of the net revenues they generated once those commissions exceeded their aggregate wages. Id. ¶¶ 198, 204.  In the 2013-2014 and 2014-2015 tax seasons, Plaintiffs' stores both ran the Gift Card Promotion JHI and/or JHTSI implemented during which Ms. Fernandez and Ms. Gay purport that they were required to distribute $50-$100 prepaid gift cards to customers that qualified. Id. ¶¶ 199, 205.  Ms. Fernandez and Ms. Gay both claim that they provided an unknown number of gift cards to customers. Id. ¶¶ 200, 206. At the end of the 2013-2014 and 2014-2015 tax seasons, Ms. Fernandez and Ms. Gay allege that they were paid a portion of their commissions since JHI and/or JHTSI and TSA subtracted from their wages the cost of the gift cards each were required to distribute under the Gift Card Promotion. Id. ¶¶ 201,

207.   Furthermore, both Plaintiffs contend that they did not authorize the aforementioned deduction nor were they advised that their commissions would be lowered by the cost of the Gift Card Promotion. Id.

### *Plaintiff Babineaux*

Plaintiff Christina Babineaux avers that she was jointly employed by JHI and/or JHTSI through a Franchisee for minimum the years 2014-2015 at a Wal-Mart located in Sulphur, Louisiana. Id. ¶ 208.  Furthermore, Ms. Babineaux contends that she entered into and signed an agreement indicating her rate of pay for each year. Id. ¶ 209.  For the 2013-2014 and 2014-2015 tax seasons, Ms. Babineaux asserts that she was to be paid a percentage of the net revenues she generated once those commissions exceeded her aggregate wage. Id. ¶ 210.  In 2013-2014 and 2014-2015 tax seasons, Ms. Babineaux states that her store ran the Gift Card Promotion and that she was required to provide to qualified customers $50-$100 prepaid gift cards pursuant to the Gift Card Promotion. Id. ¶ 211.  Further, Ms. Babineaux contends that she distributed an unknown number of gifts cards during the 2013-2014 and 2014-2015 tax seasons. Id. ¶ 212. Thereafter at the end of the 2013-2014, 2014-2015 tax seasons, Ms. Babineaux claims that she was paid a portion of her commissions as a result of the Gift Card Promotion since JHI and/or JHTSI and her Franchisee allegedly deducted from her wages the cost associated with the Gift Card Promotion. Id. ¶ 213.  Lastly, Ms. Babineaux purports that she did not authorize said deduction and that she was not advised her commissions would be lowered by the cost of the Gift Card Promotion. Id.

### *Plaintiff Boyd*

Plaintiff Brenda Boyd claims that she was jointly employed by JHI and/or JHTSI in the State of North Carolina from approximately 2003-April 2015. Id. ¶ 214.  Ms. Boyd contends that

she entered into and signed an agreement indicating her rate of pay for each year. Id. ¶ 215. For

the 2013-2014 and 2014-215 tax seasons, Ms. Boyd asserts that she was to be paid a percentage

of the net revenues she generated once those commissions exceeded her aggregate wage. Id. ¶

216. In the 2013-2014 and 2014-2015 tax seasons, Ms. Boyd's store implemented the Gift Card

Promotion Program and as a result Ms. Boyd asserts that she was required to provide customers

who qualified for the Gift Card Promotion with a $50-$100 prepaid gift card. During the 2013-

2014 tax seasons, Ms. Boyd asserts that she prepared tax returns and distributed an unknown

number of gift cards as required by the Gift Card Promotion. Id. ¶ 218. Ms. Boyd further

contends that at the end of the 2013-2014 and 2014-2015 tax seasons, she received only a portion

of her commissions. Id. ¶ 219. After receiving the alleged reduced commissions, Ms. Boyd

asserts that she had learned that JHI and/or JHTSI and TSA had deducted from her wages the

cost associated with the gift cards. Id. Ms. Boyd asserts that she did not authorize this deduction

nor was she advised that her commissions would be lowered by the Cost of the Gift Card

Promotion. Id. ¶ 219.

*Plaintiff Washington*

Plaintiff LaDonna Washington purports that she was jointly employed by JHI and/or

JHTSI through a Franchisee in the State of Oklahoma from approximately 2002 through April

2014. Id. ¶ 220. Ms. Washington asserts that in the 2013-2014 tax season, her Franchise

implemented the Gift Card Promotion. Id. ¶ 223. Ms. Washington states that she entered into

and signed an agreement, which indicated her rate of pay for 2014. Id. ¶ 221. For the 2013-2014

tax season, Plaintiff Washington asserts that she was to be paid a percentage of the net revenues

she generated once those commissions exceeded her aggregate wage. Id. ¶ 222. Pursuant to the

Gift Card Promotion, Ms. Washington asserts that she handed out an unknown number of $50-

18

$100 prepaid gift cards to qualifying customers in the 2013-2014 tax seasons. Id. ¶ 223. Thereafter at the end of the 2013-2014 tax season, Ms. Washington claims she was paid only a portion of her commissions since unbeknownst to her, JHI and/or JHTSI and her Franchisee had deducted from her wages the cost associated with the gift cards she was required to give out pursuant to the Gift Card Promotion. Id. ¶ 225.

### III.    PROCEDURAL HISTORY

The five-count Class Action Complaint (ECF No. 1) that commenced the instant action was filed on April 15, 2016 by Plaintiffs Mardis, Alexander, Morris, Dozier, Baker, Corbitt and Nichols, individually and on behalf of themselves alleging Breach of Contract against TSA or Unknown Franchisees (Count I) and Unjust Enrichment against JHTSI and Jackson Hewitt (Count II) on behalf of all Plaintiffs. The three other Counts included in the Complaint allege violations of: Kentucky Revised Statutes § 337, *et seq.* (Count III), Illinois Wage Payment and Collection Act (Count IV) and Tennessee Wage and Hour Law (Count V).

Thereafter, on June 16, 2016, Defendants JHTSI, JHI and TSA filed the First Motion to Dismiss (ECF No. 22). On July 6, 2016, Magistrate Judge Dickson granted by Order (ECF No. 27) Plaintiffs' unopposed request for leave to file an Amended Complaint in lieu of a response to Defendants' First Motion to Dismiss. The eleven-count Amended Complaint (ECF No. 29), currently pending before this Court, was filed on August 22, 2016, including six additional state law claims on behalf of newly joined Named Plaintiffs and alleging violations of: New Jersey Wage and Hour Law (Count VI), Pennsylvania Wage and Hour Law (Count VII), California Wage and Hour Law (Count VIII), South Carolina Wage and Hour Law (Count IX), North Carolina Wage and Hour Law (Count X), and Oklahoma Wage and Hour Law (Count XI). *See* Am. Compl. On October 14, 2016, Defendants filed the instant Motion to Dismiss Plaintiffs'

Amended Complaint (ECF No. 35, "Defs.' Mot. Dismiss") pursuant to Federal Rule Civil Procedure 12 (b)(6)[4]. Thereafter, Plaintiffs filed a Response in Opposition to Defendants' Motion to Dismiss the Amended Complaint (ECF No. 40, "Pls.' Reply Br.") on December 5, 2016. On December 21, 2016, Defendants filed a Reply in further support of Defendants' Motion to Dismiss the Amended Complaint (ECF No. 43, "Defs.' Reply Br.").

## IV.    LEGAL STANDARD

For a complaint to survive a motion to dismiss under Federal Rule of Civil Procedure 12 (b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). When assessing the sufficiency of a complaint the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.m Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949.

## V.    ANALYSIS

For the reasons discussed below, the Court denies Defendants' Motion to Dismiss as to Counts I and II and grants Defendants' Motion to Dismiss as to Counts III, IV, V, VI, VIII, IX,

---

[4] As the Court exercises its diversity jurisdiction over this action, generally speaking, the applicable law is that of the forum state – New Jersey. *Am. Cyanamid v. Fermentta Animal Health*, 54 F. 3d 177, 180 (3d Cir. 1995). The parties do not dispute, however, that state law claims asserted by the proposed State Sub-Classes are governed by the laws of those states. For purposes of this motion, the Court has accepted the parties' position.

and XI.  Plaintiffs may file a Second Amended Complaint to cure the pleading deficiencies discussed herein.

### A.  Common Law Breach of Contract (Count I)

All Plaintiffs bring Count I on behalf of the Nationwide Class against TSA or Unknown Franchisees alleging that:

> Plaintiffs employed by TSA entered into substantially identical 2013-2014 commission plans that constituted binding written contracts which set the sales commission due as a percentage of the net revenues that the tax preparer generated for its joint employer.  Plaintiffs employed by franchises owned by Unknown Franchisees during the 2013-2014, 2014-2015, and 2015-2016 tax seasons entered into written contracts with the Unknown Franchisees governing Plaintiffs' commission payments that constituted binding written contracts.

Am. Compl. ¶¶ 243 - 245.  Further, Plaintiffs' Amended Complaint claims that:

> The payment of commissions by TSA and Unknown Franchisees improperly and illegally deducted the costs of the Gift Card Promotion from Plaintiffs is a significant and material breach of the commission plans.  Plaintiffs gave consideration that was fair and reasonable, and have perform all conditions, covenants, and promises required to be performed under their contracts with TSA or Unknown Franchisees, respectively.  As a direct and proximate result of TSA's and Unknown Franchisees' breach of the contract, Plaintiffs suffered damages in the form of lost commission payments.

Id. ¶¶ 246 – 248.  In sum, Count I alleges that as a result of deducting the cost of the Gift Card Promotion from the revenues each Plaintiff earned, TSA or an Unknown Franchisee breached the Commission Plan.  Id.

TSA moves to dismiss Count I alleging the TSA Employee Plaintiffs waived any contractual claims against them by virtue of the following language in the Commission Plan signed by the Plaintiffs:

> You will have thirty (30) days from the payment of any commission under the Plan to notify [TSA] of any discrepancy regarding the bonus payment.  Failure to comply with this notice requirement will operate as a waiver of any claims against TSA to the fullest extent permitted by law.

Defs.' Mot. Dismiss 6; Am. Compl. Ex 1.  Defendants argue that since the Complaint was not filed until about two years later, the language of the contract bars the TSA Employee Plaintiffs' claims.  Id. 7.

In turn, Plaintiffs aver that they have not waived their contract claims. Pls.' Reply Br. 7. Plaintiffs make three arguments in support of this contention. First, Plaintiffs contend that, in the employment context, a provision within a contract that shortens a statute of limitations to 30 days is unreasonable as a matter of law. Id. 8.  In the alternative, Plaintiffs maintain that, at the barest minimum, the reasonableness of a contractual provision that shortens the statutory period is a question of fact. Id.   Next, Plaintiffs purport that Defendants' 30-day limitation provision is ambiguous and therefore unenforceable as a waiver of the statute of limitations. Id. 10.  Lastly, Plaintiffs assert that if the limitation provision was in fact valid, the doctrine of first material breach precludes its enforcement. Id. 14.

Under New Jersey law, for a plaintiff to state a claim for breach of contract, the following must be alleged: (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot, Inc.*, 507 F.3d 188, 204 (3d Cir. 2007). *See also, Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.,* 275 F. Supp. 2d 543, 566 (D.N.J. 2003); *see also Nat'l Util. Serv., Inc. v. Chesapeake Corp.*, 45 F. Supp. 2d 438, 448 (D.N.J. 1999); *see also Coyle v. Englander's,* 199 N.J. Super. 212, 223, 488 A. 2d 1083 (App. Div. 1985).

Here, the Court finds that Plaintiffs have stated a claim for breach of contract under New Jersey law sufficient to survive a motion to dismiss.  First, Plaintiffs have demonstrated that a valid contract exists as between TSA Plaintiffs and TSA and also between Franchisee Plaintiffs and Unknown Franchisees as plead in the Amended Complaint.  Secondly, Plaintiffs have

established factual allegations, which on their face are plausible to sustain a breach of contract claim. Plaintiffs specifically allege that in violation of the Plaintiffs' Commission Plans TSA or an Unknown Franchisee deducted the cost associated with the Gift Card Promotion from the net revenues earned by each Plaintiff tax preparer. Am. Compl. ¶ 39.

Next, Plaintiffs sufficiently allege that as result of Defendants alleged breach, the Plaintiffs were paid earnings less of which they claim to have been entitled. For example, on March 19, 2014, Ms. Alexander received an email from her Area Manager for Company Owned Operations, Valerie Prater ("Ms. Prater"), which set the total revenues for each Jackson Hewitt location in the Louisville, Kentucky area. Am. Compl. ¶ 80. Ms. Alexander asserts that she noticed a large disparity in the pricing numbers that showed up on her, and other employees' pricing returns, and the official Jackson Hewitt number. Id. ¶ 81. Specifically, the store at which Ms. Alexander worked reflected a total net revenue of $325,723, however the pricing returns showed higher revenues, totaling $406,866 - a difference of $81,143. Id. Lastly, the Plaintiffs demonstrate that as employees of either JHTSI, JHI, TSA or an Unknown Franchisee, Plaintiffs performed their duties under their respective commission plans as nothing in the pleadings indicates that any Plaintiffs engaged in any conduct that would jeopardize their employment or commissions. In light of the foregoing, the Court finds Plaintiffs stated a plausible claim sufficient to survive a motion to dismiss under Fed. R. Civ. P. 12 (b)(6). However, by virtue of TSA's waiver argument, the Court will address whether Plaintiffs have waived any claims against TSA or Unknown Franchisees under the terms of their commissions plans.

1. Waiver

"Waiver, under New Jersey law, involves the intentional relinquishment of a known right, and thus it must be shown that the party charged with the waiver knew of his or her legal

rights and deliberately decided to relinquish them." *Turner Constr. Co. v. Brian Trematore Plumbing & Heating, Inc.*, No. 07-666, U.S. Dist. LEXIS 95166, at *11 (D.N.J. Oct. 9, 2009)(citing *Shebar v. Sanyo Business Systems Corp.,* 111 N.J. 276, 291, 544 A.2d 377 (1988)).

When evaluating a contract, such as a waiver, first the Court is required to look to the intent of the parties as "objectively manifested by them and make a preliminary inquiry as to whether the contract is ambiguous." *Delponte v. Coral World V.I., Inc.,* No. 2002-216, U.S. Dist. LEXIS 59364, at *4-5 (D.V.I. Aug. 14, 2006)(*affirmed by Delponte v. Coral World V.I., Inc.,* 233 Fed. Appx. 178 (3d Cir. 2007)(quoting *Sunshine Shopping Ctr. v. Kmart Corp.,* 85 F. Supp. 2d 537, 540, 42 V.I. 397 (D.V.I. 2000)(citing *Hullett v. Towers, Perrin, Forster & Crosby, Inc.,* 38 F.3d 107, 111 (3d Cir. 1994)). Furthermore, "a contract is ambiguous when reasonable people in the parties' positions could think, that the contract has two reasonably alternative interpretations." *Id.*

### a.   Reasonableness of the Limitations Period

Contractual provisions that shorten the statutory period to bring a claim are valid as long as the period is reasonable. *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 611 (2013)( "[I]n the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period.")(quoting *Order of United Commercial Travelers v. Wolfe*, 331 U.S. 586, 67 S. Ct. 1355 (1947)). "A contractual provision for a time limitation in which claimants must bring suit is reasonable and enforceable if it allows the claimant a sufficient opportunity to identify and investigate a potential loss giving rise to the asserted claim." *Eagle*

*Fire Prot. Corp. v. First Indem. Of Am. Ins. Co.*, 145 N.J. 345, 678 A. 2d 699, 706 (N.J. 1996)(internal quotations omitted).

In respect to the reasonableness of the limitations period, Defendants contend that since the TSA Employee Plaintiffs' employment with TSA lasted for the duration of the 2014 tax season, which Defendants allege would entail an employment from May 2013 to April 2014 or more likely from January to April 2014, Defendants assert a 30-day window to commence an action is reasonable. Defs.' Mot. Dismiss 7.

Relying on *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604 (2013), Plaintiffs argue that in an employee context it is not reasonable to force hourly workers to identify and investigate a potential loss in their commission checks, to retain counsel as a result of these findings, and then to allow counsel to investigate, prepare and file suit to notify TSA or the franchise, all within 30 days. Pls.' Reply Br. 8-9. Furthermore, Plaintiffs contend that identifying and investigating a potential claims poses a difficult task for any employee and the time frame presented by the Commission Plan presents an attorney with a small window to dutifully and ethically assess the factual and legal circumstances. Id. 9. Plaintiffs further assert that this is an onerous burden and cite to case law from the Seventh Circuit, the District of Delaware and the Southern District of New York to support the proposition a period limited to six months is the minimally valid period. *See, e.g., Taylor v. Western & Southern Life Ins. Co.*, 966 F. 2d 1188, 1202 (7th Cir. 1992); *see also Johnson v. Daimler Chrysler Corp.*, 2003 U.S. Dist. LEXIS 28026, at *11 (D. Del. Mar. 4, 2003); *Vega v. Fed. Express. Corp.*, 2011 U.S. Dist. LEXIS 111531. * at 17 (S.D.N.Y. Sept. 29, 2011). Additionally, Plaintiffs cite to a case from the Second Circuit Court of Appeals that held a 30-day limitation was "unreasonably short" as a

matter of law. *The President Polk*, 43 F. 2d 695, 697-8 (2d Cir. 1930)("Thirty or forty days appears to us no more than a trap to get rid of inconvenient claims.")

b.  <u>Ambiguity</u>

Secondly, Plaintiffs argue that the 30-day limitation period is ambiguous. Pls.' Reply Br. 10. Plaintiffs assert that the terms are "too ambiguous to validly shorten the statute of limitations or operate as a knowing waiver of Plaintiffs' rights." Id.   As an initial matter, Plaintiffs contend that the provision at issue in the Commission Plan fails to mention any type of lawsuit or formal claim. Id. 11.   In their brief, Plaintiffs argue that as defined in Merriam-Webster, discrepancy means "a difference especially between things that should be the same." Id.   Plaintiffs further argue that "[p]resumably, Defendants' clause stands for the proposition that, if a person earning commissions notices a difference between what they were paid and what their commission statement indicated they would be paid, then they were to notify the company within 30 days." Id. In accordance with this notion, Plaintiffs further assert that the provision at issue does not mention anything about a lawsuit or the shortening of a statute of limitations nor does the provision specify what the employee is waiving. Id.   Ultimately, Plaintiffs argue that the Thirty Day Provision "would not put a reasonable person in Plaintiffs' position on notice that they had to audit Defendants' records, or somehow determine precisely what Defendants deducted from gross revenues to arrive at the net revenues on which the commissions were paid, within 30 days of getting paid." Id.  11-12.   Plaintiffs cite to Third Circuit precedent which sets forth that "waiver, under New Jersey law, involves the intentional relinquishment of a known right, and thus it must be shown that the party charged with waiver knew of his or her legal rights and deliberately intended to relinquish them…Questions of waiver, therefore are usually questions of intent, which are factual determinations…." *Gillman v. Waters, McPherson, McNeill,* P.C., 271

26

F. 3d 131, 140 (3d Cir. 2001)(quoting *Shebar v. Sanyo Bus. Sys. Corp.*, 544 A. 2d 377, 384 (N.J. 1988)(internal quotations omitted)).    Plaintiffs conclude by asserting that in light of the foregoing "Defendants cannot prevail on the argument that Plaintiffs knowingly waived the applicable statute of limitations on the present claims." Pls.' Reply Br. 12.

Moreover, Plaintiffs contend that in accordance with New Jersey precedent the Commission Plan must be construed against the Defendants as the drafters.    Id.    Citing the Second Restatement of Contracts § 206, Plaintiffs also assert that public policy considerations support Plaintiffs' position. Id.   The Second Restatement of Contacts § 206 sets forth:

> Where one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party. He is also more likely than the other party to have reason to know of uncertainties of meaning. Indeed, he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert. In cases of doubt, therefore, so long as other factors are not decisive, there is substantial reason for preferring the meaning of the other party.  The rule is often invoked in cases of standardized contracts and in cases where the drafting party has the stronger bargaining position, but it is not limited to such cases.

Restatement (Second) of Contracts § 206 cmt. A (1981).

### c.   First Material Breach

Lastly, Plaintiffs purport that even if the provision stating that Plaintiffs must bring a claim within 30 days were enforceable, Defendants cannot seek to enforce the provision because Defendants committed the first material breach by failing to pay all wages due under the contract and as a result, any obligation Plaintiffs arguably had to provide was discharged. Id. 14.  Under the first material breach doctrine, Plaintiffs argue that because Defendants committed the first material breach by failing to pay Plaintiffs their earned wages under the contract, any and all obligations under the purported notice provision were discharged. Id. 16.    In support of the proposition that a first material breach will excuse another party's failure to comply with a notice

provision, Defendants cite to case law from the Northern District of Illinois and an Indiana state court.  Under Third Circuit precedent, "for a breach to be material, it must go to the essence of the contract." *Sabatini v. Its Amore Corp.*, 455 F. App'x 251, 256 (3d Cir. 2011)(quoting *Norfolk S. Ry. Co. v. Basell USA In*c., 512 F.3d 86, 92 (3d Cir. 2008). "Materiality of a breach is a question of fact. *Id.* (quoting *Norfolk S. Ry.*, 512 F. 3d 86 at 91.  Because the Court at this stage in the proceeding, the Court is not assessing the materiality of the breach, the Court will not discuss this argument.

In light of the foregoing arguments and surrounding facts, the Court agrees with the Plaintiffs and finds that it is not clear that a valid waiver is present.  New Jersey law requires that it be demonstrated that Plaintiffs voluntarily relinquished a known right.  Here, it has not been shown that Plaintiffs, at the time the contract was entered into, clearly intended to relinquish any and all claims against TSA 30 days after payment of any commissions if a Plaintiff failed to notify TSA about a discrepancy in the bonus payment.  However, with that being said, the Court agrees with Plaintiffs and finds that the limitation period of 30-days does not sufficiently allow a party to identify and investigate a claim in the circumstances at hand.  It appears to the Court that limiting a period to 30 days, when the statute of limitations in New Jersey for contract claims is usually 6 years, is unreasonably short, taking into account the nature of the parties, as Defendants are the second largest tax preparation service company in the United States and Plaintiffs are individual employees of the corporation.  Furthermore, when interpreting a contract, it is well established that the contract be interpreted as against the drafter.  In the interest of fairness and with public policy considerations in mind, the Court finds that the Plaintiffs did not validly waive their rights as against TSA or any unknown franchisees and therefore the Court denies Defendants Motion to Dismiss as to Count I.

### B.  Common Law Unjust Enrichment (Count II)

All Plaintiffs bring Count II against JHTSI and JHI claiming that:

> JHTSI and/or JHI have benefited and been enriched by [their] improper and unlawful conduct.... JHTSI and/or JHI have generated and received for themselves millions of dollars of revenue as a result of the Gift Card Promotion, while Plaintiffs have unfairly paid the price for the cost of the Gift Card Promotions.

Am. Compl. ¶ 251.  Further, Plaintiffs assert that JHTSI and JHI have knowledge of this benefit and have voluntarily accepted and retained said benefit. Id. ¶¶ 252, 253.  Hence, Plaintiffs argue that it would be inequitable for JHTSI and JHI "to retain the ill-gotten benefit without paying the value thereof to Plaintiffs." Id. ¶ 254.

In their motion, Defendants argue that Count II should be dismissed because Plaintiffs have not sufficiently alleged the necessary elements of an unjust enrichment claim against JHTSI and JHI under New Jersey Law to survive a motion to dismiss. Defs.' Mot. Dismiss 8. Defendants set forth the following two bases in support of their argument:  1.) "neither JHTSI nor JHI received a direct benefit from any of the Plaintiffs" (id. 9); 2.) "Plaintiffs had no expectation of remuneration from either JHTSI or JHI" (id. 12).   For the reasons discussed below, the Court denies Defendants' motion to dismiss Plaintiffs' claim for unjust enrichment as against JHTSI and JHI.

"To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.,* 135 N.J. 539, 554, 641 A.2d 519 (1994).   In New Jersey, for a plaintiff to establish a claim for unjust enrichment, the plaintiff must "show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *Id.*  Plaintiff must also prove "that it expected remuneration from the defendant at the time it performed or conferred a benefit

29

on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.*   In determining whether Plaintiffs have adequately stated a claim for unjust enrichment, the critical inquiry is whether the plaintiff's detriment and the defendant's benefit are related to, and flow from, the challenged conduct. *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004).  As discussed below, The Court finds that Plaintiffs have sufficiently plead the elements of an unjust enrichment claim sufficient to survive a motion to dismiss.

### 1.  Direct Benefit

In support of Defendants' first challenge to Plaintiffs' unjust enrichment claim, Defendants argue that Plaintiffs have failed to allege any facts that demonstrate a direct relationship between themselves and either JHTSI or JHI. Defs.' Mot. Dismiss 9.  Defendants purport that New Jersey law does not recognize a cause of action for unjust enrichment as a basis for tort liability.  Defs.' Mot. Dismiss 8.  Instead, Defendants assert that a claim for unjust enrichment may only be brought under a contractual or quasi-contractual theory of liability. Id. Furthermore, Defendants argue that Plaintiffs fail to allege a contractual relationship between themselves and JHI or JHTSI, and therefore only a quasi-contractual theory of liability remains as a viable option. Id.  Accordingly, Defendants argue that Plaintiffs have not sufficiently alleged a contractual relationship between Plaintiffs and JHI so therefore the unjust enrichment claim would have to be brought under a quasi-contractual theory of liability. Id. 10.  For a claim to proceed on the basis of quasi-contractual liability, Plaintiffs must show that Defendants received a direct benefit, that retention of that benefit would be unjust, and also that there was a direct relationship between the Plaintiffs and the Defendants. Id.

Plaintiffs' Amended Complaint sets forth that "JHTSI and JHI" act as integrated enterprise, alter egos and joint employers with TSA and the Jackson Hewitt Franchises.  Am.

Compl. ¶ 25. Furthermore, Plaintiffs contend that "JHTSI and JHI are liable under ostensible agency, as Plaintiffs and class members understand and understood 'Jackson Hewitt' to be their employer." Id.

The Court finds that Plaintiffs have plead sufficient factual allegations to establish a direct relationship between JHTSI and JHI and Plaintiffs to demonstrate that Defendants JHTSI and JHI conferred a benefit beyond their contractual right and as a result were unjustly enriched due to the conduct at issue. In determining whether Plaintiffs have adequately stated a claim for unjust enrichment, the critical inquiry is whether the plaintiff's detriment and the defendant's benefit are related to, and flow from, the challenged conduct. *In re K-Dur Antitrust Litig.*, 338 F. Supp. at 544.   Here, it is clear that all parties to this action are all related to the action so that the alleged detriment and benefit are related to and flow from the challenged conduct.

### 2.   Expectation of Remuneration

Defendants also allege Plaintiffs fail to contend any facts that demonstrate they had an expectation of remuneration from JHTSI or JHI at the time they conferred the alleged unjust benefit as required by New Jersey law.   The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights. *VRG*, 135 N.J. at 554 (internal citations omitted).

Here, the Court finds that Plaintiffs adequately establish the element of remuneration for an unjust enrichment claim under New Jersey Law.   The Plaintiffs have sufficiently set forth facts to establish that at the time they expected to be paid their commissions, a portion was withheld, in the amount associated with the Gift Card Promotion, and that the Plaintiffs did not

expect this amount to be deducted from their net revenues.  The amount withheld by JHTSI and

JHI in the amount of each $50 or $100 gift card and the alleged failure to pay Plaintiffs the full

amount of commissions establishes the element of remuneration under New Jersey law. The

Court therefore finds that Plaintiffs have set forth factual allegations against JHTSI and JHI

sufficient to survive a motion to dismiss and therefore, the Court denies Defendants' Motion to

Dismiss Count II in light of the foregoing reasons.

### C. Sub-Class Claims  (Counts III - XI)

Counts III through XI contain claims brought by proposed State Sub-Classes for alleged

violations of various state wage and hour law claims.

1. State Sub-Class Claims

a. Kentucky Revised Statutes § 337, *et seq.* (Count III)

Plaintiffs Mardis, Alexander, Morris, Dozier, Baker and members of the Kentucky Sub-

Class bring Count III alleging that they are employees of TSA, JHTSI and/or JHI, or the

Franchisees, JHTSI and/or JHI within the meaning of Key. Rev. Stat. Ann. § 337.010(1)(e). Am.

Compl. ¶ 258.  TSA, Franchisees, JHTSI and/or JHI are "employers" within the meaning of Key.

Rev. Stat. Ann. § 337.010(1)(d). Id. ¶ 259.  Plaintiffs Mardis, Alexander, Morris, Dozier, Baker

and members of the Kentucky Class were paid wages within the meaning of Key. Rev. Stat. Ann.

§ 337.010(1)(c)(1) during the relevant period and that JHTSI, JHI and TSA or franchisees

illegally withheld wages from Members of the Kentucky Sub-Class in violation of Key. Rev.

Stat. Ann. § 337.060(1) by deducting the cost of the Gift Card Promotion from the Plaintiffs'

commissions. Id. ¶¶ 261, 262.   The Amended Complaint also alleges that TSA, Unknown

Franchisees, JHTSI and/or JHI failed to provide Plaintiffs Mardis, Alexander, Morris, Dozier,

Baker, and members of the Kentucky Sub-Class with a statement of deductions from their wages in violation of Key. Rev. Stat. Ann. § 337.070(1). Id. ¶ 262.

### b.  Illinois Wage Payment and Collection Act (Count IV)

Plaintiff Ms. Corbitt and the Illinois Sub-Class bring Count IV alleging that they were or are employees of TSA, Franchisees, JHTSI and/or JHI within the meaning of 820 Ill. Comp. Stat. Ann. § 115/2 and that TSA, Franchisees, JHTSI and/or JHI are "employers" also within the meaning of 820 Ill. Comp. Stat. Ann § 115/2. Am. Compl. ¶ ¶ 264, 265.  Plaintiff Ms. Corbitt and the Illinois Sub-Class purport that they were paid wages within the meaning of 820 Ill. Comp. Stat. Ann § 115/2 during the relevant period, however that JHTSI, JHI and TSA or the Franchisees failed to pay Ms. Corbitt and the Illinois Sub-Class all of their earned wages in violation of 820 Ill. Comp. Stat. Ann § 115/4. Id. ¶ 267.  Further, Ms. Corbitt and the Illinois Sub-Class aver that JHTSI, JHI and TSA or Franchisees illegally withheld wages from Members of the Illinois Sub-Class in violation of 820 Ill. Comp. Stat. Ann § 115/9 by deducting the cost of the Gift Card Promotion from the Plaintiffs' commissions. Id. ¶ 268.  The Amended Complaint also alleges that TSA, Unknown Franchisees, JHTSI and/or JHI failed to provide Plaintiff Ms. Corbitt and Illinois Sub-Class with a statement of deductions from their wages in violation of 820 Ill. Comp. Stat. Ann § 115/9. Id. ¶ 268.

### c.  Tennessee Wage and Hour Law (Count V)

Plaintiff Ms. Nichols and the Tennessee Sub-Class bring Count V alleging that they are employees of TSA, Franchisees, JHTSI and/or JHI within the meaning of Tenn. Code Ann. § 50-2-101-113 and that TSA, Franchisees, JHTSI and/or JHI are "employers" also within the meaning of Tenn. Code Ann. § 50-2-101-113. Am. Compl. ¶ 270.  Plaintiff Ms. Nichols and the

33

Tennessee Sub-Class purport that they were paid wages within the meaning Tenn. Code Ann. §
50-2-101-113 during the relevant period, however that JHTSI, JHI and TSA or the Franchisees
failed to pay Ms. Nichols and the Tennessee Sub-Class all of their earned wages in violation of
Tenn. Code Ann. § 50-2-101-113. Id. ¶ 272.  Further, Ms. Nichols and the Tennessee Sub-Class
aver that JHTSI, JHI and TSA or Franchisees illegally withheld wages from Members of the
Tennessee Sub-Class in violation of Tenn. Code Ann. § 50-2-110 by deducting the cost of the
Gift Card Promotion from the Plaintiffs' commissions. Id. ¶ 273.  The Amended Complaint also
alleges that TSA, Unknown Franchisees, JHTSI and/or JHI failed to provide Plaintiffs Ms.
Nichols and the Tennessee Sub-Class with a statement of deductions from their wages in
violation of Tenn. Code Ann. § 50-2-101-113. Id. ¶ 272.

### d.  New Jersey Wage and Hour (Count VI)

Plaintiff Ms. Knight and the New Jersey Sub-Class bring Count VI alleging that they are
employees of TSA, Franchisees, JHTSI and/or JHI within the meaning of N.J. Stat. § 34:11- 4(b)
and that TSA, Unknown Franchisees, JHTSI and/or JHI are "employers" also within the meaning
of N.J. Stat. § 34-4.1(a). Am. Compl. ¶ 276.  Plaintiffs Ms. Knight and the New Jersey Sub-Class
purport that they were paid wages within the meaning N.J. Stat. § 34-4.1(c) during the relevant
period, however that JHTSI, JHI and TSA or the Franchisees failed to pay Ms. Knight and the
New Jersey Sub-Class all of their earned wages in violation of N.J. Stat. § 34:11 *et seq*.  Id. ¶
278.   Further, Ms. Knight and the New Jersey Sub-Class aver that JHTSI, JHI and TSA or
Franchisees illegally withheld wages from Members of the New Jersey Sub-Class in violation of
N.J. Stat. § 34:11-4.4 by deducting the cost of the Gift Card Promotion from the Plaintiffs'
commissions. Id. ¶ 273.  The Amended Complaint also alleges that TSA, Unknown Franchisees,

JHTSI and/or JHI failed to provide Plaintiffs Ms. Knight and the New Jersey Sub-Class with a statement of deductions from their wages in violation of N.J. Stat. § 34:11-4.4. Id. ¶ 279.

### e.   Pennsylvania Wage and Hour Law (Count VII)

Plaintiff Ms. Donaldson and the Pennsylvania Sub-Class bring Count VII asserting that TSA, Franchisees, JHTSI and/or JHI are "employers" as defined by 43 P.S. § 260.2a. Am. Compl. ¶ 281.   The Pennsylvania Sub-Class further alleges that the commissions to be paid to Ms. Donaldson and the Pennsylvania Sub-Class constitute wages as defined by 43 P.S. § 260.2a. Id. ¶ 282.   Count VII argues that JHTSI, JHI, and TSA or the Franchisees failed to pay Ms. Donaldson and the Pennsylvania Sub-Class all of their earned wages in violation of 43 P.S. § 260.1-260.12. Id. ¶ 283.   Additionally, the Pennsylvania Sub-Class alleges that JHTSI, JHI and TSA or the Franchisees illegally withheld or deducted the cost of the Gift Card Promotion from Ms. Donaldson and the Pennsylvania Sub-Class in violation of 34 Pa. Code § 9.1, which Count VII asserts is also a violation of 43 P.S. § 260.1-260.12. Id. ¶ 284.

### f.   California Wage and Hour Law (Count VIII)

Plaintiffs Ms. Niemeyer, Ms. Meyers, Ms. Dickerson and the California Sub-Class bring Count VIII alleging that they are employees of Defendants and performed "labor" as defined in Cal. Lab. Code § 200(b). Am. Compl. ¶ 286.   The California Sub-Class alleges that the Commissions paid to Ms. Niemeyer, Ms. Meyers, and Ms. Dickerson and the California Sub-Class constitute "wages" under Cal. Lab. Code § 200(a). Id. ¶ 287.  Plaintiffs of the California Sub-Class further allege that pursuant to Cal. Lab. Code §§ 221 and 224, the commissions to be paid to Ms. Niemeyer, Ms. Meyers and Ms. Dickerson and the Class were "earned" once the employee performed all required to complete the sale. Id. ¶ 288.  JHTSI, JHI, and TSA or the

Franchisees illegally withheld or deducted the cost of the promotion from Ms. Niemeyer, Ms. Meyers and Ms. Dickerson and the class after the sale was complete. Id. ¶ 289.   Additionally, Plaintiffs of the California Sub-Class allege that Defendants violated Cal. Lab. Code § 2751 by failing to pay Plaintiffs and the California Sub-Class in accordance with the commissions' agreements. Id. ¶ 290. Plaintiffs further purport that Defendants violated Cal. Lab. Code §§ 201 through 203 by failing to pay all wages when due to Plaintiffs and the California Sub-Class at the time of their separation from employment, "giving Plaintiffs and members of the California Sub-Class the right to waiting time penalties as provided by those statutes."   Id. ¶ 291.   Lastly, Plaintiffs argue that they are "therefore entitled to their wages owed, penalties, and attorneys' fees as provided by California law." Id. ¶ 292.

### g. South Carolina Wage and Hour Law (Count IX)

Plaintiff Scott and the South Carolina Sub-Class bring Count IX alleging JHTSI, JHI, and TSA or the Franchisees are "employers" within the meaning of S.C. Code Ann. § 41-10-10(1) and that the Commissions earned by Ms. Scott and the South Carolina Sub-Class fall within the meaning of wages as defined by in the S.C. Code Ann. § 41-10-10(2).   Am. Compl. ¶¶ 294, 295. Furthermore, Plaintiffs aver JHTSI, JHI and TSA or the Franchisees failed to pay Ms. Scott and the South Carolina Sub-Class all of their wages in violation of S.C. Code Ann. § 41-10-10 through § 41-10-110.   Id. ¶ 296.   Finally, the South Carolina Sub-Class claims that "JHTSI, JHI, and TSA or the Franchisees illegally withheld or deducted the cost of the promotion from Ms. Scott and the South Carolina Sub-Class in violation of S.C. Code Ann. § 41-10-40." Id. ¶ 297.

### h. North Carolina Wage and Hour Law (Count X)

Plaintiff Boyd and the North Carolina Sub-Class bring Count X alleging JHTSI, JHI, and TSA or the Franchisees are "employers" within the meaning of N.C. Gen. Stat. § 95-25.2(5) and that the Commissions earned by Ms. Scott and the South Carolina Sub-Class fall within the meaning of wages as defined in the N.C. Gen. Stat. § 95-25.2(16). Am. Compl. ¶¶ 300, 301. Furthermore, Plaintiffs aver JHTSI, JHI and TSA or the Franchisees failed to pay Ms. Boyd and the North Carolina Sub-Class all of their wages in violation of N.C. Gen. Stat. § 95-25 *et seq*. Id. ¶ 302. Finally, the North Carolina Sub-Class claims that "JHTSI, JHI, and TSA or the Franchisees illegally withheld or deducted the cost of the promotion from Plaintiff Boyd [and] the North Carolina Sub-Class in violation of N.C. Gen. Stat. § 95-25.8." Id. ¶ 303.

### i.   Oklahoma Wage and Hour Law (Count XI)

Plaintiff Washington and the Oklahoma Sub-Class bring Count XI alleging that they are "employees" of JHTSI, JHI, and TSA or the Franchisees as defined by 40 Okl. Stat. § 165.1.2 and JHTSI, JHI and TSA or the Franchisees are "employer(s)" within the meaning of 40 Okl. Stat. § 165.1.1. Id. ¶¶ 305, 306.   Furthermore, the Amended Complaint asserts that the commissions earned by Plaintiff Washington and the Oklahoma Sub-Class fall within the meaning of "wages" as set forth in 40 Okl. Stat. § 165.1.4. Id. ¶ 307.   Plaintiff Washington and the Oklahoma Sub-Class claim "JHTSI, JHI, and TSA or the Franchisees failed to pay Plaintiff Washington and the Oklahoma Sub-Class all of their earned wages in violation of 40 Okl. Stat. § 165, *et seq*." Id. ¶ 308. Lastly, Plaintiffs of the Oklahoma Sub-Class claim that JHTSI, JHI, and TSA or the Franchisees illegally withheld or deducted the cost of the promotion from Plaintiff Washington the Oklahoma Sub-class in violation of 40 Okl. Stat. § 165, *et seq*. Id. ¶ 309.

### 2.   Grounds in Support of Defendants' Motion to Dismiss State Sub-Class claims

Defendants move to dismiss the wage and hour laws claims of the various State Sub-Classes alleging that the Amended Complaint fails to plead violations of wage and hour laws based on the statutory definition of "employer." Additionally, Defendants allege that the Amended Complaint fails to state a claim under the Kentucky and Tennessee law for independent reasons. For the reasons discussed below, the Court grants Defendants' Motion to Dismiss as to Counts III, IV, V, VI, VII, VIII, IX, X and XI.

    a.   <u>Statutory Definition of "Employer" within the meaning of the State Sub-Classes</u>

Defendants move to dismiss the following claims:

- Mardis, Alexander, Morris, Dozier, and Baker's claim under the Kentucky Revised Statutes against "unknown" franchisees in Count III (Key. Rev. Stat. § 337.010(1)(d))

- Corbitt's claim under the Illinois Wage Payment and Collection Act against TSA in Count IV (820 ILCS 115/2)

- Nichols' claim under the Tennessee Protection Act against TSA in Count V (Tenn. Code § 50-2-101-113)

- Knight's claim under the New Jersey Wage and Hour Law against TSA in Count VI (N.J. Stat. Ann. § 34:11-4.1(a))

- Donaldson's claim under the Pennsylvania Wage and Payment and Collection Law against "unknown" franchisees in Count VII (43 Pa. Stat. § 260.2a.)

- Niemeyer, Meyer and Dickerson's claim under the California Labor Code against TSA in Count VIII (Cal. Lab. Code §§ 200)

- Scott's claim under the South Carolina Payment of Wages Act against TSA in Count IX (S.C. Code § 41-10 -10 (1))

- Boyd's claim under the North Carolina Wage and Hour Act against "unknown" franchisees in Count X (N.C. Gen. Stat. § 95-25.2(5))

- Washington's claim under the Oklahoma Protection of Labor Act against TSA in Count XI (Okla. Stat. § 40 165.1 (1))

Defs.' Mot. Dismiss 13. Defendants assert that:

> Plaintiffs allege two employer groups. The TSA Employee Plaintiffs were employed by TSA, with JHI and JHTSI allegedly responsible as joint employers. The Franchisees Employee Plaintiffs were employed by 'unknown' franchisees, with JHI and JHTSI allegedly responsible as joint employers. There is never overlap alleged between the two.

Id. Defendants further contend that when the Plaintiffs assert their state wage and hour law claims (Counts III to XI), Plaintiffs include all Defendants under each state law claim. Id. Defendants argue that by virtue of the two Employee Plaintiff groups, *i.e.* the TSA Employee Plaintiffs and the Unknown Franchisee Plaintiffs, Plaintiffs fail to state a claim because all Defendants are not alleged to be employers as that word is defined in the relevant statutes. Id.

The Court grants Defendants' motion as to the aforementioned Named Plaintiffs' claims because as discussed above the TSA Employees Plaintiffs consist of Mardis, Alexander, Morris, Dozier, Baker, Coleman, Fernandez, Gay and Boyd as the Amended Complaint asserts they were previously or are currently jointly employed by TSA, JHI and JHTSI. Am. Compl. ¶¶ 1-6; 16-7; 19. Furthermore, the Franchisee Employee Plaintiffs consist of Corbitt, Nichols, Knight, Donaldson, Niemeyer, Meyer, Dickerson, Scott, Babineaux, and Washington and set forth in the Amended Complaint that they were previously jointly employed by a Franchisee, JHI and JHTSI. Id. ¶¶ 9-15; 20.

### b.  "Agreed Upon" Wages under the Kentucky Revised Statute

In addition to claiming the Kentucky Sub-Class fails to allege facts sufficient to fulfill the statutory definition of "employer" against unknown franchises as set forth in Key. Rev. Stat. § 337.010 (1)(d). Defendants also move to dismiss Count III asserting that the claims under Key. Rev. Stat. §§ 337.060(1) and 337.070 fail as a matter of law because there is a bona fide dispute regarding wages. The Kentucky Revised Statute provides in relevant part:

> Wages includes any compensation due to an employee by reason of his or her employment, including salaries, commissions, vested vacation pay, overtime pay, severance or dismissal pay, earned bonuses, and any other similar advantages agreed upon by the employer and the employee or provided to employees as an established policy.

Key. Stat. Ann. § 337.010 (c)(1).  Furthermore, in support of this contention, Defendants argue "the statute does not apply 'where there exists a bona fide dispute concerning wages.'" *Kimmel v. Progress Paint Mfg. Co.*, No. 2002-CA-000273-MR, 2003 Ky. App. Unpub. LEXIS 1, *at 3 (Ky. Ct. App. Jan. 10, 2003).

In accordance with Kentucky case law and per the Kentucky Revised Statute, the Court finds that the Kentucky Revised Statute does not apply since the commissions at issue are not "agreed upon" but rather are "in dispute."   *See AT&T Corp v. Fowler*, No. 2006-CA-000535-MR, 2007 Ky. App. Unpub. LEXIS 209 (Ky. Ct. App. Sept. 14, 2007).  Because of this, the Court dismisses Count III as against TSA, JHI and JHTSI.

c. Tennessee Wage Protection Act

Additionally, Defendants seek to dismiss Plaintiff Nichols's claim against all defendants under the Tennessee Wage Protection Act (Count V) on grounds that the assertions as set forth in the Named Plaintiff's factual allegations seeks relief only from TSA or the "unknown" franchisees while Count V as brought by Ms. Nichols seeks relief from all Defendants. Defs.' Mot. Dismiss. 16.   To the extent that Ms. Nichols is pursuing anyone other than "unknown" franchisees, Defendants move to dismiss claims as against those Defendants claiming there are no facts present to satisfy the statutory definition of "employer" or employee" under the Tennessee Wage Protection Act. Tenn. Code. §§ 50-2-101-113, 50-2-201(3)-(4), 50-1-208. The Court finds that Ms. Nichols has failed to fulfill the pleading requirements under Federal Rule Civil Procedure 8 (a) and 12 (b)(6) and therefore Count V is dismissed without prejudice. *Iqbal*,

129 S. Ct. at 1949("[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.")

### D. **Unknown Franchisee Defendants**

Defendants seek to dismiss Franchisee Defendants 1-100 from this action. Defs.' Mot Dismiss 18. Defendants argue Plaintiffs failed to serve "Unknown Franchisees 1-100" within ninety days of the filing of the complaint as required by Federal Rule of Civil Procedure 4(m) and therefore, Defendants argue that the claims against the "unknown franchisees 1-100" should be dismissed pursuant to Federal Rule of Civil Procedure 4(m). Id. Defendants assert that Plaintiffs had over one-hundred and eighty days since the Complaint was filed against the unknown franchisees on April 15, 2016 to "review their agreements with and pay checks from these franchisees, identify them in the complaint and properly serve them." Id. Defendants maintain that the amendment to Plaintiffs' Complaint does not save their claims from dismissal. Id. Additionally, Defendants assert that JHI will be prejudiced by Plaintiffs' inactions since JHI is the franchisor of these unknown franchisees, and "it cannot file any compulsory cross-claims or third party complaints for indemnification and contribution, as is its right pursuant to the franchise agreements, until plaintiffs identify the franchisees in their complaint." Id. In response, Plaintiffs argue that the Defendants have not provided "any plausible reason for this Court to dismiss all unknown franchisees" and that good cause exists for an extension of time as the Franchisees are unknown at this juncture. Plaintiffs' Amended Complaint asserts that currently Franchisees are not sufficiently known to Plaintiffs and therefore the Amended Complaint maintains that Plaintiffs reserve the right to amend the instant Complaint to include the Unknown Franchisees true names if and when they become known. Id. ¶ 24.

The Court finds that, at this stage in the proceeding, because the Franchisees 1-100 are unknown, the Court will not address this contention until proper discovery has occurred in order to ascertain the Unknown Franchisees so that any potential parties may be properly served under Federal Rule of Civil Procedure 4.

### E.  CONCLUSION

For the reasons discussed herein, Defendants' Motion to Dismiss Counts I and II of Plaintiffs' Amended Complaint is denied.   Defendants' Motion to Dismiss Counts III, IV, V, VI, VII, VIII, IX, and XI is granted without prejudice.   Plaintiffs may file a Second Amended Complaint within 30 days of the issuance of this Opinion to cure the pleading deficiencies discussed above.   An appropriate Order accompanies this Opinion.

DATED: March **23** , 2017

_____

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE

43