# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| WANDA MARDIS, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>JACKSON HEWITT TAX SERVICE INC., et al.,<br><br>*Defendants*. | Civil Action No. 16-2115<br><br>**OPINION** |

## John Michael Vazquez, U.S.D.J.

This putative class action concerns Defendants' alleged violations of Plaintiffs' employment contracts and various states' wage laws by reducing the commissions earned by Plaintiffs as tax preparers for the 2013-2014, 2014-2015, 2015-2016, and 2016-2107 tax seasons. Currently pending before the Court are Defendants' motions to dismiss Plaintiffs' Third Amended Class Action Complaint ("TAC"). D.E. 165, 166, 167, 168. The Court reviewed the parties' submissions[1] and decided the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and

---

[1] Defendants submitted four separate motions to dismiss, grouped as follows: (1) LMG (D.E. 165); (2) Jackson Hewitt (D.E. 166); (3) KEF and TAYLOR (D.E. 167); and (4) WING (D.E. 168). Plaintiffs submitted two separate oppositions, grouped as follows: (1) opposition to LMG, KEF, TAYLOR, and WING (D.E. 177); and (2) opposition to Jackson Hewitt (D.E. 176). Defendants replied separately, grouped as follows: (1) LMG (D.E. 178); (2) KEF and TAYLOR (D.E. 179); (3) WING (D.E. 180); and (4) Jackson Hewitt (D.E. 181). LMG's brief in support of its motion will be referred to as "LMG's Br."; Jackson Hewitt's brief in support of its motion will be referred to as "Jackson Hewitt's Br."; KEF and TAYLOR's brief in support of their motion will be referred to as "KEF's Br."; and WING's brief in support of its motion will be referred to as "WING's Br." Plaintiffs' opposition to LMG, KEF, TAYLOR, and WING will be referred to as "Pls.' Opp. to Franchisees"; and Plaintiffs' opposition to Jackson Hewitt will be referred to as "Pls.' Opp. to Jackson Hewitt." LMG's reply brief will be referred to as "LMG's Reply"; Jackson Hewitt's reply

L. Civ. R. 78.1(b). For the following reasons, the Court **GRANTS in part** and **DENIES in part** Defendant Jackson Hewitt's motion to dismiss, and the Court **GRANTS** Defendants LMG, KEF, TAYLOR, and WING's motions to dismiss for lack of personal jurisdiction.

## I.     BACKGROUND[2]

The Court[3] included an extensive factual background in its March 23, 2017 Opinion, D.E. 44, which the Court incorporates by reference here insofar as it pertains to the same parties and claims. By way of background, the following facts are taken from Plaintiffs' Third Amended Complaint. D.E. 68. Plaintiffs are Wanda Mardis, Kim Alexander, Cecilia Morris, Karla Dozier, Sheila Baker, Sandra Coleman, Katrina Corbitt, Jacqueline Knight, Amy Donaldson, Sonja Niemeyer, Terry Meyer, Catherine Dickerson, Carol Scott, Amanda Disotell, Elaine Fernandez, Jessica Gay, Christina Babineaux, Brenda Boyd, LaDonna Washington, and Danice Ragland, (collectively, "Named Plaintiffs"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"). TAC ¶¶ 1-20.

Defendants are Jackson Hewitt Tax Service, Inc. ("JHTS") and Jackson Hewitt, Inc. ("JH") (collectively, "Jackson Hewitt"), and KE Farmer Enterprises, LLC ("KEF"), Lemaire-McCumsey Group, Inc. ("LMG"), Taylor Tax and Accounting ("TAYLOR"), and Wing Financial Services,

---

brief will be referred to as "Jackson Hewitt's Reply"; KEF and TAYLOR's reply brief will be referred to as "KEF's Reply"; and WING's reply brief will be referred to as "WING's Reply."

[2] When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[3] The Court's previous Opinion dated March 23, 2017 was issued by former Chief Judge Jose Linares. D.E. 44. This matter was reassigned to this Court on May 20, 2019. D.E. 186.

2

LLC ("WING") (collectively, the "Franchisees"), among others.[4] *Id.* ¶¶ 21-33. Defendants collectively provide tax preparation services to customers under the tradename "Jackson Hewitt." *Id.* ¶¶ 38-39. Plaintiffs allege that the Franchisees' "day to day operations [] are closely supervised and controlled by [Jackson Hewitt]" and that "although [Jackson Hewitt] may purport to be separate from [the Franchisees], in reality, they act as an integrated enterprise, alter egos of each other and as joint employer[s]." *Id.* ¶ 39. All Named Plaintiffs claim that they were previously, or are currently, employed by Jackson Hewitt. *Id.* ¶¶ 1-20. In addition, Named Plaintiffs Corbitt, Knight, Donaldson, Niemeyer, Meyer, Dickerson, Scott, Disotell, Babineaux, and Washington claim to have been previously jointly employed by Jackson Hewitt and one of the Franchisees. *Id.* ¶¶ 7-14; 17, 19.

For the duration of each tax season, Jackson Hewitt and the Franchisees employ tax preparers, such as Plaintiffs, to file clients' tax returns. *Id.* ¶ 75. These tax preparers receive employment contracts with compensation plans based, in part, on the individual revenues they generate during the tax season. *Id.* ¶ 75. For the 2013-2014 tax season, Defendants administered a promotional program to induce new customers to use Defendants' tax service (the "Gift Card Promotion"). *Id.* ¶¶ 49, 80. As part of the Gift Card Promotion, Plaintiffs were required to offer prepaid gift cards to all new customers who qualified for the promotion and filed their taxes with Jackson Hewitt. *Id.* ¶ 81. At the conclusion of the 2013-2014 tax season, Plaintiffs were paid their sales commission in accordance with their compensation plans. *Id.* ¶ 52. In calculating Plaintiffs' commissions, however, Jackson Hewitt deducted the value of the prepaid gift cards from the revenues that Plaintiffs earned during the tax season, thus resulting in Plaintiffs receiving lower

---

[4] Plaintiffs also assert claims against additional defendants; however, the Court addresses only the Defendants who have moved to dismiss Plaintiffs' claims.

commission payments. *Id.* Plaintiffs claim this deduction was in breach of Plaintiffs' employment contracts and various states' wage laws. *Id.* ¶ 52. Defendants continued to deduct the cost of the Gift Card Promotion from the revenues Plaintiffs earned for the 2014-2015, 2015-2016, and 2016-2017 tax seasons, resulting in Plaintiffs receiving lower commission payments for each of those respective tax seasons. *Id.* ¶¶ 56-57.

## II. PROCEDURAL HISTORY

On October 4, 2017, Plaintiffs were instructed to file their Third Amended Complaint naming all franchises at which Named Plaintiffs worked. D.E. 66. On November 15, 2017, Plaintiffs filed their Third Amended Complaint, naming as additional defendants LMG, KEF, TAYLOR, and WING, among other franchises. D.E. 68. Specially, Plaintiffs assert twelve claims against either Jackson Hewitt, the Franchisees, or both: (1) breach of contract against LMG, KEF, TAYLOR, and WING; (2) unjust enrichment against Jackson Hewitt; (3) violation of Kentucky wage law against Jackson Hewitt; (4) violation of Illinois wage law against Jackson Hewitt; (5) violation of New York wage law against Jackson Hewitt; (6) violation of New Jersey wage law against Jackson Hewitt; (7) violation of Pennsylvania wage law against Jackson Hewitt; (8) violation of California wage law against TAYLOR and Jackson Hewitt; (9) violation of South Carolina wage law against KEF and Jackson Hewitt; (10) violation of North Carolina wage law against Jackson Hewitt; (11) violation of Oklahoma wage law against WING and Jackson Hewitt; and (12) violation of Washington wage law against Jackson Hewitt. TAC ¶¶ 253-330.

Defendant Jackson Hewitt moved to dismiss Count Eleven for failure to state a claim. D.E. 166. Defendant LMG moved to dismiss all counts against it for lack of personal jurisdiction, for failure to state a claim, for improper venue, and for improper joinder, or in the alternative, for a more definite statement. D.E. 165. Defendants KEF and TAYLOR together moved to dismiss all

4

counts against them for lack of personal jurisdiction, for failure to state a claim, and pursuant to the doctrine of *forum non-conveniens*, or in the alternative, for Plaintiffs' claims to be severed and transferred. D.E. 167. Defendant WING moved to dismiss all counts against it for lack of personal jurisdiction and pursuant to the doctrine of *forum non-conveniens*, or in the alternative, for Plaintiffs' claims to be severed and transferred. D.E. 168. Plaintiffs separately opposed Jackson Hewitt's motion to dismiss, D.E. 176, and LMG, KEF, TAYLOR, and WING's motions to dismiss. D.E. 179. Defendants replied. D.E. 178, 179, 180, 181.

## III. STANDARD OF REVIEW

### A. Rule 12(b)(2) - Motion to Dismiss for Lack of Personal Jurisdiction:

Federal Rule of Civil Procedure 12(b)(2) permits a party to move to dismiss a case for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). In such a motion, the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). When a court "resolves the jurisdictional issue in the absence of an evidentiary hearing and without the benefit of discovery, the plaintiff need only establish a prima facie case of personal jurisdiction." *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 461 (D.N.J. 2015). In such cases, a court "take[s] the allegations of the complaint as true." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

However, once a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Id.* In other words, a court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff. *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). Plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state." *Otsuka*, 106 F. Supp. 3d at 462 (citing *Mellon Bank (E) PSFS, Nat'l Ass'n v. Farino*,

5

960 F.2d 1217, 1223 (3d Cir. 1992)). In addition, a court "may always revisit the issue of personal jurisdiction if later revelations reveal that the facts alleged in support of jurisdiction remain in dispute." *Otsuka*, 106 F. Supp. 3d at 462 n.5 (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009)).

A federal court "engages in a two-step inquiry to determine whether it may exercise personal jurisdiction": (1) "whether the relevant state long-arm statute permits the exercise of jurisdiction," and (2) "if so, [whether] the exercise of jurisdiction comports with due process" under the Fourteenth Amendment. *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998)). "New Jersey's long-arm statute extends the state's jurisdictional reach as far as the United States Constitution permits, so the analysis turns on the federal constitutional standard for personal jurisdiction." *Id.* (citing *IMO Industries*, 155 F.3d at 259). Accordingly, the two steps are collapsed into one and a court must "ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted). In other words, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

"Personal, or in personam, jurisdiction, [generally] divides into two groups: 'specific jurisdiction' and 'general jurisdiction.'" *Display Works*, 182 F. Supp. 3d at 172 (citing *Burger King*, 471 U.S. at 472 n. 14 (1985)). Specific jurisdiction "depends on an affiliatio[n] between the

6

forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014)). General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Id.* (quoting *Walden*, 571 U.S. at 284 n.6). Personal jurisdiction can also be obtained through consent, waiver, or in-state service on a defendant. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590-97 (1991) (regarding consent via a forum selection clause); *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 628 (1990) (regarding in-state service); *In re Asbestos Products Liability Litigation (No. VI)*, 921 F.3d 98, 104-05 (3d Cir. 2019) (regarding waiver); *Jasper v. Bexar County Adult Detention Center*, 332 Fed App'x. 718, 719 (3d Cir. 1999) (regarding consent).

### B. Rule 12(b)(6) - Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however,

"must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

## IV. LAW AND ANALYSIS

### A. Personal Jurisdiction over Defendants KEF, TAYLOR, LMG, and WING

Defendants KEF, TAYLOR, LMG, and WING each move to dismiss Plaintiffs' Third Amended Complaint for, *inter alia*, lack of personal jurisdiction. KEF's Br. at 7; LMG's Br. at 7; WING's Br. at 7. The Court finds that Plaintiffs have failed to establish personal jurisdiction over KEF, TAYLOR, LMG, and WING.

When a court "resolves the jurisdictional issue in the absence of an evidentiary hearing and without the benefit of discovery, the plaintiff need only establish a prima facie case of personal jurisdiction." *Otsuka Pharm. Co.*, 106 F. Supp. 3d at 461. In such cases, a court "take[s] the allegations of the complaint as true." *Dayhoff Inc.*, 86 F.3d at 1302. However, once a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Id.* In other words, a court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff. *See Carteret Sav. Bank*, 954 F.2d at 142 n.1. A plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state." *Otsuka*, 106 F. Supp. 3d at 462 (citing *Mellon Bank (E) PSFS, Nat'l Ass'n*, 960 F.2d at 1223).

Here, Plaintiffs' argument that there exists personal jurisdiction over KEF, TAYLOR, LMG, and WING is solely based on a forum section clause in the Franchisees' franchise agreement

8

with Jackson Hewitt. *See* TAC, Ex. 5 at 23; Pls.' Opp. to Franchisees at 4-19.[5] As an initial matter, the Court notes that in their Third Amended Complaint, Plaintiffs put forth only the conclusory allegation that the Franchisees "have conducted business within the State of New Jersey," TAC ¶ 36, but otherwise fail to establish "by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc.*, 86 F.3d at 1302. Conversely, the Franchisees contest Plaintiffs' single allegation with various certifications and affidavits to the contrary. *See* D.E. 165, Ex. 2; D.E. 167, Exs. 3,4; D.E. 168, Ex. 2. In their opposition brief, Plaintiffs do not contest the "exhaustive jurisdictional minimum-contacts analysis" set forth in the Franchisees' moving briefs. Pls.' Opp. to Franchisees at 2. Rather, Plaintiffs argue for the first time that the Franchisees "signed valid forum selection clauses and [thus] waived opposition to personal jurisdiction in New Jersey." *Id.* at 2.

The Court finds that the forum selection clause is not applicable to this case. The forum selection clause reads as follows:

> *28.2. Jurisdiction.* You [the Franchisees] consent to venue and personal jurisdiction in all litigation brought by us [Jackson Hewitt] or our *Affiliates* against you [Franchisees], which in any way arises out of or relates to your franchise relation with us, including, but not limited to, any and every aspect of entering into the franchise relation, this Agreement, any guaranty or other Collateral Agreements with us or our Affiliates, our performance in connection with the franchise relation, any termination, rescission, cancellation or nonrenewal of the franchise relation, and conduct post-termination or post-expiration of this Agreement, in the following

---

[5] The Court notes that the numbering of the paragraphs in the franchise agreement attached as Exhibit 5 to the Third Amended Complaint is different from the numbering of the paragraphs cited by Plaintiffs in their opposition brief. For example, Plaintiffs' opposition brief cites to paragraph 29.2 for the relevant provision regarding jurisdiction, but that provision is actually paragraph 28.2 of the franchise agreement attached to the Third Amended Complaint. *Compare* D.E. 177, *with* D.E. 68-5. It appears that the paragraph numbering in Plaintiffs' opposition brief instead tracks the paragraph numbering of the franchise agreement submitted by Defendants KEF and TAYLOR as Exhibit B to their motion to dismiss. *See* D.E. 167-7. The difference, however, is immaterial to the Court's analysis.

9

> courts: (a) the state or county court of any city or county where we have our principal place of business, (presently, Morris County, New Jersey); and, (b) the United States District Court nearest to our principal place of business, (presently the District of New Jersey, Newark Division).

TAC, Ex. 5 at 23 (emphasis added). Furthermore, the franchise agreement contains the following definition: "'Affiliated Companies' or 'Affiliate(s)' means any person [or entity[6]] that, directly or indirectly, controls, is controlled by, or is under common control with, the referenced party" *Id.* at 1.

Plaintiffs contend that they are "Affiliates" within the meaning of the franchise agreement because Plaintiffs – as employees – "were all directly and indirectly controlled by [Jackson Hewitt] and/or were under common control with [Jackson Hewitt] and the [Franchisees]." Pls.' Opp. to the Franchisees at 5. In other words, Plaintiffs claim that, as employees, they fall under the definition of "any person [or entity] that, directly or indirectly . . . is controlled by, or is under common control with [Jackson Hewitt]." *Id.* In response, the Franchisees argue that are not "Affiliates" of Jackson Hewitt within the meaning of the franchise agreement. KEF's Reply 1-8; LMG's Reply at 3-7; WING's Reply at 1-5. The Court agrees with the Franchisees.

Courts must "[i]nterpret a contract according to its plain language by reading the document as a whole in a fair and common sense manner so as to match the reasonable expectations of the parties." *Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir.

---

[6] The Court notes that the contractual language cited in Plaintiffs' opposition brief regarding "Affiliate" is slightly different than the language in the franchise agreement attached as Exhibit 5 to Plaintiffs' Third Amended Complaint. *Compare* TAC, Ex. 5, *with* Pls.' Opp. to Franchisees at 5. The language cited in Plaintiffs' opposition again appears to track the language of the franchise agreement submitted by Defendants KEF and TAYLOR as Exhibit B to their motion to dismiss, which reads as follows: "'Affiliated Companies' or 'Affiliate(s)' means any person *or entity* that, directly or indirectly, controls, is controlled by, or is under common control with, the referenced party." *See* D.E. 167-7, Ex. B (emphasis added). The difference, however, is immaterial to the Court's analysis.

10

2011) (citing *Hardy ex rel. Dowdell v. Abdul-Matin*, 965 A.2d 1165, 1168-69 (N.J. 2009) ("A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner.")). "In making a determination concerning the clarity or ambiguity of [a] contract term[], the [c]ourt should avoid interpreting contractual language in a way that renders any term of the contract meaningless or superfluous." *Glenpointe Associates, III v. Regency Sav. Bank*, No. 06-1690, 2006 WL 2786885, at *6 (D.N.J. Sept. 25, 2006) (citing *Penske Logistics, Inc. V. KLLM, Inc.*, 285 F. Supp. 2d 468, 474 (D.N.J. 2003)).

Here, reading the franchise agreement in a "fair and common sense manner" leads to the conclusion that Plaintiffs are not "Affiliates" of Jackson Hewitt within the meaning of the franchise agreement. Plaintiffs admit that they are employees. The franchise agreement makes a clear distinction between affiliates and employees. For example, Section 18.3 of the franchise agreement prohibits the Franchisees from hiring the "employees" of Jackson Hewitt or its Affiliates, stating in relevant part:

> *18.3. Covenant Against Recruiting or Hiring Our Employees.*
> During the term of this Agreement . . . neither you [Franchisee] nor any of your Owners may, without our prior written permission, during the below-mentioned employees' employment with us or our Affiliates . . . solicit, recruit, or hire . . . *any of our or our Affiliates' employees*[.]

TAC, Ex. 5 at 17 (emphasis added). This provision clearly indicates that a Franchisee may not recruit or hire the employees of Jackson Hewitt or its affiliates.[7] In other words, the franchise agreement differentiates between affiliates and employees.

---

[7] If the Court were to accept Plaintiff's interpretation of the term "Affiliate," then this provision would mean that the "Affiliates' employees" language would actually mean the "Employees' employees." Such a reading is nonsensical; there is no indication that Plaintiffs, as employees, were permitted or did hire their own employees.

A similar distinction between employees and affiliates is found in Section 28.1 of the franchise agreement:

> *28.1. Governing Law.* We accept this Agreement in the State of New Jersey. In any action, suit, or claim . . . by or against you [Franchisee] or us (including our present or former agents and employees, our [A]ffiliates, and our [A]ffiliates' present or former agents and employees, which in any way arises out of or relates to your [Franchisee's] franchise relation with us . . . [.]

TAC, Ex. 5 at 22. Again, if Plaintiffs' interpretation of "Affiliate" were adopted, then the distinct use of the different terms "employee" and "Affiliate" would be rendered "meaningless or superfluous." *Glenpointe Associates, III*, 2006 WL 2786885, at *6 (explaining that a "[c]ourt should avoid interpreting contractual language in a way that renders any term of the contract meaningless or superfluous"). The same distinction between the terms "employee" and "Affiliate" is also found in Section 28.3 (discussing venue), Section 28.5 (discussing waiver of jury trial), and Section 28.6 (discussing waiver of punitive damages), among other sections. TAC, Ex. 5 at 23-24. Accordingly, the franchise agreement clearly distinguishes between the terms "employee" and "Affiliate," and therefore, the Court declines to read them as synonymous.

Rather, by interpreting the franchise agreement in a "fair and common sense manner so as to match the reasonable expectations of the parties," the Court finds that Plaintiffs are not "Affiliates" of Jackson Hewitt within the meaning of the franchise agreement, and therefore, the forum selection clause is not applicable as a basis for personal jurisdiction.[8] Because Plaintiff

---

[8] The Court also notes that Plaintiffs are attempting to enforce the forum-selection clause of a contract to which they are non-parties. "In the Third Circuit, a non-signatory party may enforce a forum selection clause in a contract if that party is a third-party beneficiary of the contract or is closely related to the contractual relationship or dispute such that it is foreseeable that the party will be bound." *D'Elia v. Grand Caribbean Co., Ltd.*, No. 09-1707, 2010 WL 1372027, at *3 (D.N.J. Mar. 30, 2010). "To qualify as a third-party beneficiary, it must be shown that the contract was 'made for the benefit of that third party within the intent and contemplation of the contracting parties.'" *Id.* (quoting *Hadley v. Shaffer*, No. 99-144, 2003 WL 21960406, at *5 (D. Del. Aug. 12,

provides no other basis for this Court to assert personal jurisdiction over the Franchisees, the Court therefore grants Defendants KEF, TAYLOR, LMG, and WING's motions to dismiss for lack of personal jurisdiction.[9]

---

2003)). Here, there is no indication that the franchise agreements between Jackson Hewitt and the Franchisees were made for the benefit of Plaintiffs. Rather, the franchise agreement appears to be just that – an agreement between a franchisor and a franchisee. It makes little sense that Jackson Hewitt (and its affiliates) would have entered into a franchise agreement with the Franchisees with the intent to benefit the Franchisees' (then un-hired) employees. Moreover, as noted by the court in *In re Mushroom Transp. Co., Inc.*,

> It is one thing for a party, with rights and obligations under a contract, to seek [] enforcement [of a forum selection clause] against others. It is quite a another, however, for a non-party individual or organization to seek to enforce a [forum selection] clause against a contracting party. It stretches logic and reason to assert that non-party parties with absolutely no rights or obligations under a contract (indeed, who were nowhere in the picture when the contract was signed) should be allowed to enforce a clause against a party to the contract in later litigation.

247 B.R. 395, 398 n.4 (E.D. Pa. 2000). Because the Court finds that the forum selection clause is not applicable in the first instance, however, the Court therefore need not reach the issue as to whether Plaintiffs may enforce the forum selection clause as non-parties.

[9] The Court's decision is limited to a finding of no personal jurisdiction over KEF, TAYLOR, LMG, and WING. The Court does not reach the other issues raised by the Franchisees concerning Plaintiffs' failure to state a claim, improper venue, improper joinder, the doctrine of *forum non-conveniens*, nor the Franchisees' requests that Plaintiffs' claims be severed and transferred. To the extent the Franchisees raise these issues, their motions are denied as moot.

## B. Defendant Jackson Hewitt's Motion to Dismiss for Failure to State a Claim[10]

Plaintiff Washington and the Oklahoma Sub-Class[11] bring Count Eleven against Jackson Hewitt, among others, for violation of the Oklahoma Protection of Labor Act, Okla. Stat. Ann. tit. 40, §§ 165 *et seq.* TAC ¶¶ 320-325. Specifically, Plaintiff Washington and the Oklahoma Sub-Class assert (1) that they were or are "employees" of Jackson Hewitt as defined by Okla. Stat. Ann. tit. 40, § 165.1.2; (2) that Jackson Hewitt is an "employer" as defined by Okla. Stat. Ann. tit. 40, § 165.1.1; and (3) that the commissions earned by Plaintiff Washington and the Oklahoma Sub-Class constitute "wages" as defined by Okla. Stat. Ann. tit. 40, § 165.1.4. *Id.* ¶¶ 321-323. As such, Plaintiff Washington and the Oklahoma Sub-Class claim that Jackson Hewitt failed to pay Plaintiff Washington and the Oklahoma Sub-Class their earned wages in violation of Okla. Stat. Ann. tit. 40, § 165, *et seq. Id.* ¶¶ 324-325.

Defendant Jackson Hewitt moved to dismiss Count Eleven against it for failure to state a claim under Rule 12(b)(6), arguing that neither JHTS nor JH can be considered an "employer" under Okla. Stat. Ann. tit. 40, § 165.1.1. Jackson Hewitt's Br. at 1-2. Plaintiff Washington and the Oklahoma Sub-Class acknowledge that JHTS is the parent corporation of JH, and JH is the franchisor of WING, the franchisee. TAC ¶¶ 19, 21-22, 40. Therefore, Jackson Hewitt asserts that

---

[10] As the Court explained in its previous Opinion, D.E. 44, in exercising its diversity jurisdiction over this action, the Court would generally apply the law of the forum state – New Jersey. *Am. Cyanamid v. Fermentta Animal Health*, 54 F.3d 177, 180 (3d Cir. 1995). The parties do not dispute, however, that the Oklahoma state law claim asserted by Plaintiff Washington and the proposed Oklahoma Sub-Class is governed by the law of Oklahoma. For purposes of this motion, the Court has accepted the parties' position.

[11] Named Plaintiffs bring this suit on behalf of themselves and all others similarly situated, the latter of which are grouped into "State Sub-Classes." TAC ¶ 245. The Third Amended Complaint defines the Oklahoma Sub-Class as "[a]ll persons in the State of Oklahoma who are current or former tax-preparers of . . . JHTS[], [JH] and [the] Franchisees, from January 2014 through the present." *Id.* ¶ 245.

regardless of Plaintiffs' theory of joint employer liability, pursuant to Okla. Stat. Ann. tit. 59, § 6005(B),(C) "[a] franchisor shall not be considered the employer of a franchisee or a franchisee's employees," and "[t]he employees of a franchisee shall not be considered employees of the franchisor[.]" Jackson Hewitt's Br. at 2 (citing Okla. Stat. Ann. tit. 59, § 6005(B),(C)). In other words, JH (the franchisor) and JHTS (the franchisor's parent corporation) cannot be considered an "employer" of Plaintiff Washington or the Oklahoma Sub-Class under Oklahoma law, nor can Plaintiff Washington and the Oklahoma Sub-Class be considered "employees" of Jackson Hewitt. Jackson Hewitt's Br. at 2. As such, Jackson Hewitt asserts that neither Plaintiff Washington nor the Oklahoma Sub-Class have sufficiently pled that Jackson Hewitt meets the statutory definition of "employer" under Okla. Stat. Ann. tit. 40, § 165.1.1 or "employee" under Okla. Stat. Ann. tit. 40, § 165.1.2. *Id.* Plaintiffs respond that Okla. Stat. Ann. tit. 59, § 6005 has an effective date of November 1, 2016, and therefore the statute should not be applied retroactively to bar Count Eleven insofar as Plaintiffs' claims arose before November 1, 2016. Pls.' Opp. to Jackson Hewitt at 2-5. Plaintiff, however, appears to concede that Okla. Stat. Ann. tit. 59, § 6005 bars Count Eleven insofar as it pertains to claims arising on or after November 1, 2016. *Id.* at 2.

The Court finds that Okla. Stat. Ann. tit. 59, § 6005 does not apply retroactively. Under Oklahoma law, "statutes and amendments are to be construed to operate only prospectively unless the [l]egislature clearly expresses a contrary intent." *Anagnost v. Tomecek*, 390 P.3d 707, 711-12 (Okla. 2017); *see also Cole v. Silverado Foods, Inc.*, 78 P.3d 542, 546 (Okla. 2003) ("Absent a plain legislative intent to the contrary, statutes are generally presumed to operate prospectively only."); *see also Wickham v. Gulf Oil Corp.*, 623 P.2d 613, 615 (Okla. 1981) (explaining that "[s]tatutes are generally presumed to operate prospectively") (quoting *Scott Paper Company v. City of Anacortes*, 578 P.2d 1292, 1299 (Okla. 1978)). "However, this presumption does not defy

rebuttal if the purposes and intention of the Legislature to give a statute a retrospective effect are expressly declared or are necessarily implied from the language used." *Wickham*, 623 P.2d at 615-616. Where there exists doubt as to the purpose and intent of the legislature, however, "the doubt should be resolved against retrospective effect." *Barnhill v. Multiple Injury Tr. Fund*, 37 P.3d 890, 898 (Okla. 2001); *see also CNA Ins. Co. v. Ellis*, 148 P.3d 874, 877 (Okla. 2006) ("Statutes are typically not given retroactive effect unless the Legislature has made its intent to do so clear. Any doubts must be resolved against a retroactive effect."). Here, the Court is entirely unable to discern from the Oklahoma legislature a clearly expressed contrary intent to the general presumption that statutes are to operate prospectively only. *See Anagnost*, 390 P.3d at 711-12 (Okla. 2017) (explaining that "statutes and amendments are to be construed to operate only prospectively unless the [l]egislature clearly expresses a contrary intent").

Jackson Hewitt argues that retroactivity can be implied from the context in which the Oklahoma legislature enacted § 6005. Specifically, Jackson Hewitt argues that the Oklahoma legislature intended to apply § 6005 retroactively in the wake of the National Labor Relations Board's 2015 decision in *Browning-Ferris Industries of California Inc.*, which expanded the joint-employer standard under the National Labor Relations Act. *See* 362 N.L.R.B. 1599, 1614 (2015), *affirmed in part and reversed in part, Browning-Ferris Industries of California, Inc. v. Natl. Lab. Rel. Bd.*, 911 F.3d 1195, 1222 (D.C. Cir. 2018). Additionally, Jackson Hewitt argues that the U.S. Department of Labor's 2016 Opinion Letter, which broadly interpreted the joint-employer standard with respect to the Fair Labor Standards Act and Migrant and Seasonal Agricultural Worker Protection Act, also influenced the Oklahoma legislature to enact § 6005. *See* 2016 WL 284582 (Jan. 20, 2016). Therefore, according to Jackson Hewitt, the NLRB's decision in *Browning-Ferris* – decided on August 27, 2015 – and the Department of Labor's Opinion Letter

– issued on January 20, 2016 – prompted the Oklahoma legislature to ratify § 6005 – enacted on May 24, 2016. *See* 2016 Okla. Sess. Law Serv. Ch. 327 (S.B. 1496) (codified at Okla. Stat. Ann. tit. 59, § 6005).

However, even accepting Jackson Hewitt's argument that the Oklahoma legislature enacted § 6005 in response to the proceedings described above, Jackson Hewitt provides no indication that the legislature did so with the particular intention of applying § 6005 retroactively. At best, Jackson Hewitt's argument merely casts doubt as to whether § 6005 should apply retroactively, and therefore, "the doubt should be resolved against retrospective effect." *Barnhill*, 37 P.3d at 898; *see also CNA Ins. Co.*, 148 P.3d at 877 ("Statutes are typically not given retroactive effect unless the Legislature has made its intent to do so clear. Any doubts must be resolved against a retroactive effect.").

Moreover, Jackson Hewitt also argues that the stated purpose of § 6005 is to "provide[] for clarification of employment status." Jackson Hewitt's Br. at 9. Jackson Hewitt cites to *Polymer Fabricating, Inc. v. Employers Workers' Compen. Ass'n*, 980 P.2d 109, 114 (Okla. 1998) for the proposition that "clarifying amendments" are to apply retroactively. *Id.* at 8. *Polymer Fabricating* found that "[w]here an earlier legislative enactment is unclear in some respect and a later enactment attempts to remove the ambiguity, the amendatory statute constitutes a clarifying enactment that is to be given retrospective force." 980 P.2d at 114 (emphasis removed). As further explained by the Oklahoma Supreme Court:

> A clarifying amendment is one that explains ambiguous law in order to remove doubt concerning the legislative intent in the original text. By amending a statute the legislature may have intended (a) to change existing law or (b) to clarify ambiguous law. Its precise intent is ascertained by looking to the circumstances that surround the change. If the earlier statute definitely expressed an intent or had been judicially interpreted, the Legislature's amendment is presumed to have changed an existing law, but if the meaning of the

> earlier statute was in doubt, or where uncertainty as to the law's meaning did exist, a presumption arises that the amendment was designed to more clearly express the legislative intent that was left indefinite by the earlier text.

*Polymer Fabricating Inc.*, 980 P.2d at 114 n.18 (internal citations omitted).

Here, the Court disagrees that § 6005 was a "clarifying amendment." There was no ambiguity in any previous version of § 6005 because there *was no* previous version of the statute. As argued by Jackson Hewitt, the Oklahoma legislature allegedly first enacted § 6005 in response to the federal proceedings described above. Insofar as Jackson Hewitt argues that Okla. Stat. Ann. tit. 59, § 6005 should instead be read as "clarifying" Okla. Stat. Ann. tit. 40, § 165, the latter is a wholly separate statute addressing different issues. *Cf. Polymer Fabricating, Inc.*, 980 P.2d at 114 (where original text of § 149.1 of the Workers' Compensation Act was ambiguous, an added subsection to same statute constituted a "clarifying" amendment and thus applied retroactively); *Samman v. Multiple Injury Tr. Fund*, 33 P.3d 302, 307 (Okla. 2001) (where no ambiguity existed in original version of statute, a later amendment to the same statute "[could] not be said to have been enacted by the [l]egislature to clarify the earlier law"). Even assuming that Okla. Stat. Ann. tit. 59, § 6005 could be read as clarifying Okla. Stat. Ann. tit. 40, § 165, the latter is not an "ambiguous law" in need of clarification "to remove doubt concerning the legislative intent in the original text." *Polymer Fabricating, Inc.*, 980 P.2d at 114 n.18. Rather, it appears that Okla. Stat. Ann. tit. 59, § 6005 was enacted as an entirely new statute addressing the employer/employee relationship as it relates to franchises.

Accordingly, Court finds that Okla. Stat. Ann. tit. 59, § 6005 does not apply retroactively to bar Count Eleven insofar as Plaintiffs' claims arose before November 1, 2016. However, the Court also finds – and Plaintiffs appear to concede – that Okla. Stat. Ann. tit. 59, § 6005 does bar Count Eleven insofar as Plaintiffs' claims arose on or after November 1, 2016.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendant Jackson Hewitt's motion to dismiss Count Eleven, and **GRANTS** Defendants LMG, KEF, TAYLOR, and WING's motions to dismiss for lack of personal jurisdiction. An appropriate Order accompanies this Opinion.

Dated: December 26th, 2019

John Michael Vazquez, U.S.D.J.