**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WANDA MARDIS, *et al.*, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> JACKSON HEWITT TAX SERVICE INC., *et al.*, <br><br> *Defendants*. | Civil Action No. 16-2115 <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

   This putative class action alleges that Defendants paid Plaintiffs less than they should have. Plaintiffs, tax preparers, assert that Defendants' promotional program of providing customers with gift cards resulted in lower commissions for Plaintiffs, in violation of their contractual rights. Plaintiffs also allege that Defendants were unjustly enriched and violated multiple state wage and hour laws. Presently before the Court are (1) the motion to deny class certification brought by Defendants Jackson Hewitt Tax Service Inc. ("JHTSI"), Jackson Hewitt Inc. ("JHI"), and Tax Services of America, Inc. ("TSA"),[1] D.E. 208, and (2) Plaintiffs' cross-motion for class

---

[1] Defendants also seek leave to file a brief in excess of the Local Rule 7.2(b) page-limit *nunc pro tunc*. D.E. 208. Defendants should have obtained permission to file an overlength brief in advance rather than request permission after the fact. Although the Court could impose sanctions for violating L. Civ. R. 7.2(b) (*see, e.g.*, *In re Nice Sys., Ltd. Secs. Litig.*, 135 F. Supp. 2d 551, 558 n.6 (D.N.J. 2001) (denying motion to dismiss without prejudice for failure to comply with L. Civ. R. 7.2(b))), the Court will not do so given the fact that Plaintiffs do not appear to oppose this aspect of Defendants' motion. Accordingly, Defendants' motion for leave to file an overlength brief *nunc pro tunc* is granted.

certification, D.E. 211.  The Court reviewed the parties' submissions[2] and considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).  For the following reasons, Defendants' motion to deny class certification is **GRANTED** and Plaintiffs' motion for class certification is **DENIED without prejudice**.

I.     **BACKGROUND**

A.  **Factual Background**

The Court included an extensive factual background in its March 23, 2017 Opinion,[3] D.E. 44, and provided an additional factual history in its December 26, 2019 Opinion, D.E. 191. The Court incorporates both by reference here.  Defendants provide tax preparation services to customers under the tradename "Jackson Hewitt."[4]  TAC ¶¶ 38-39.  TSA is a subsidiary of JHTSI and/or JHI, and operates approximately 20% of locations operating under the name of "Jackson Hewitt."  *Id.* ¶ 39.  The remaining locations are franchisees that are "closely supervised and controlled by JHTSI and/or JHI."  *Id.*  Named Plaintiffs claim that they were previously, or are currently, employed by Jackson Hewitt as tax preparers.  Plaintiffs worked at both TSA and franchisee locations.  *Id.* ¶¶ 1-20.

In the TAC, Plaintiffs alleged that all tax preparers have compensation plans based, in part,

---

[2] Defendants' brief in support of their motion to deny class certification is referred to as "Defs. Br.," D.E. 208-1; Plaintiffs' brief in opposition to Defendants' motion and in support of their cross-motion is referred to as "Plfs. Br.," D.E. 212; Defendants' reply brief in support of their motion and response in opposition to Plaintiffs' cross-motion is referred to as "Defs. Reply," D.E. 210; and Plaintiffs' reply in support of their cross-motion is referred to as "Plfs. Reply," D.E. 209.  In addition, it appears that Plaintiffs filed a second, identical version of their reply brief at D.E. 213.

[3] The Court's March 23, 2017 Opinion was issued by former Chief Judge Jose Linares.  This matter was reassigned to the undersigned on May 20, 2019.  D.E. 186.

[4] The facts are derived from Plaintiffs' Third Amended Complaint ("TAC"), D.E. 68, and the exhibits attached to the parties' briefs, D.E. 208, 209, 210, 212.

on the individual revenues they generate during a tax season.  *Id.* ¶ 75.  Now, however, Plaintiffs concede that not all tax preparers were entitled to receive a commission, that some commissions were not based on revenues, and other tax preparers might not have even had an employment contract.  Plfs. Br. at 15.  Plaintiffs indicate that these tax preparers would not be members of their proposed classes.  For those tax preparers who were entitled to receive incentive pay based on revenue, Plaintiffs allege that JHI and JHTSI deducted the value of prepaid gift cards that were provided to customers through a gift card promotion (the "Promotion") from Plaintiffs' revenues when calculating their commissions.  TAC ¶¶ 52, 56-57.  Plaintiffs contend that this improper practice caused them to receive lower commission payments.  *Id.*

### B.  Procedural History

Plaintiffs filed their initial complaint in this matter on April 15, 2016.  D.E. 1.  On October 4, 2017, Plaintiffs were instructed to file the TAC, D.E. 66, which they filed on November 15, 2017, D.E. 68.  In the TAC, Plaintiffs assert the following claims against either JHTSI, JHI, TSA, and multiple franchisees (the "Franchisee Defendants"): (1) breach of contract (Count One); (2) unjust enrichment (Count Two); and (3) violations of multiple state wage and hour laws (Counts Three through Twelve).  TAC ¶¶ 253-330.

JHTSI; JHI; and the Franchisee Defendants Lemaire-McCumsey Group, Inc.; KE Farmer Enterprises, LLC; Taylor Tax & Accounting; and Wing Financial Services, LLC filed motions to dismiss the TAC.  D.E. 165-68.  On December 26, 2019, the Court granted the Franchisee Defendants' motions to dismiss for lack of personal jurisdiction.  D.E. 191-92.

On July 9, 2020,  Defendants[5] filed their motion to deny class certification and Plaintiffs

---

[5] None of the remaining Franchisee Defendants joined in Defendants' motion to deny class certification, but it appears that none of the remaining Franchisee Defendants have been served.

filed their cross-motion to certify a class.  D.E. 208, 211.  Through their cross-motion, Plaintiffs

seek to certify the following classes:

1. A nationwide class of persons employed as tax preparers by TSA from the 2013-2014 tax season until the 2016-2017 tax season whose pay was lowered by the JH Defendants' Promotion (for Plaintiffs' breach of contract and unjust enrichment claims);

2. A nationwide class of persons employed as tax preparers by franchisees from the 2013-2014 tax season until the 2016-2017 tax season whose pay was lowered by the JH Defendants' Promotion (for Plaintiffs' breach of contract and unjust enrichment claims);

3. Ten state subclasses of people jointly employed by JHI and the franchisees in the states of New Jersey, New York, Illinois, Kentucky, North Carolina, California, Pennsylvania, South Carolina, Oklahoma, and Washington whose pay was lowered by the JH Defendants' Promotion (for Plaintiffs' state law wage and hour claims)

Plfs. Br. at 2, 6, 18; Plfs. Reply at 2.

## II.   CLASS CERTIFICATION STANDARD

Federal Rule of Civil Procedure 23 governs class actions.  *Marcus v. BMW of N. Am., LLC*,

687 F.3d 583, 590 (3d Cir. 2012).  "[E]very putative class action must satisfy the four requirements

of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)."  *Id.* at 590 (citing Fed. R.

Civ. P. 23(a)-(b)).  Plaintiffs first bear the burden of showing that the proposed classes satisfy the

four requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;
(2) There are questions of law or fact common to the class;
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  These four prongs are

often referred to as numerosity, commonality, typicality, and adequacy.  *See, e.g., Erie Ins. Exch.*

4

*v. Erie Indem. Co.*, 722 F.3d 154, 165 (3d Cir. 2013).

Plaintiffs also must show that the proposed classes satisfy Rule 23(b)(1), (b)(2), or (b)(3). *Marcus*, 687 F.3d at 590.  Here, Plaintiffs argue that the putative class meets the requirements of Rule 23(b)(3).  Under Rule 23(b)(3), a plaintiff must establish the following:

> [T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Pursuant to Rule 23(c)(1)(A), a court "must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A).  The decision to certify a class or classes is left to the discretion of the court.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008), *as amended* (Jan. 16, 2009).  "The requirements set out in Rule 23 are not mere pleading rules."  *Marcus*, 687 F.3d at 591 (citing *Hydrogen Peroxide*, 552 F.3d at 316).  "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence."  *Id.* (citing *Hydrogen Peroxide*, 552 F.3d at 307).  "A party's assurance to the court that it intends or plans to meet the requirements is insufficient."  *Hydrogen Peroxide*, 552 F.3d at 318.

The Third Circuit emphasizes that "actual, not presumed, conformance with Rule 23 requirements is essential."  *Marcus*, 687 F.3d at 591 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)) (internal quotations omitted).  "To determine whether there is actual conformance with Rule 23, a district court must conduct a 'rigorous analysis' of the evidence and

arguments put forth." *Id.* (quoting *Falcon*, 457 U.S. at 161). This "rigorous analysis" requires a district court to "resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits – including disputes touching on elements of the cause of action." *Id.* Therefore, a district court "may delve beyond the pleadings to determine whether the requirements for class certification are satisfied." *Hydrogen Peroxide*, 552 F.3d at 320.

## III.    ANALYSIS

### A. Rule 23(a) Requirements

#### 1. Numerosity

"No single magic number exists" to meet the numerosity requirement. *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 139 (D.N.J. 2009). Yet, "the Third Circuit has previously held that the numerosity requirement will generally be satisfied 'if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40.'" *Id.* (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)). But "[m]ere speculation as to the number of class members—even if such speculation is 'a bet worth making'—cannot support a finding of numerosity." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 357 (3d Cir. 2013) (citing *Marcus*, 687 F.3d at 596).

Plaintiffs "submit that the Class includes thousands of individuals throughout the country." Plfs. Br. at 9. Plaintiffs provide no factual support for this assertion in their initial brief. In their reply brief, however, Plaintiffs demonstrate that more than 13,000 tax preparers prepared at least one tax return for each year at issue at a franchisee location, and approximately 5,000 tax preparers prepared a return for each year at issue for TSA location. Plfs. Reply at 9-10; *Id.*, Exs. 2, 3. For the proposed subclasses, Plaintiffs argue that each state subclass will consist of more than forty individuals per state, as each state at issue had more than forty individual franchisee storefronts or

kiosks operating as Jackson Hewitt.  Plfs. Br. at 9, Ex. 1.  Plaintiffs continue that it is reasonable to assume that at least one tax preparer worked at each location, such that the "Court could properly use its 'common sense'" to determine that Plaintiffs "far exceed any minimal numerosity requirement."  Plfs. Reply at 9.

Plaintiffs fail to meet their burden as to numerosity.  "Where a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone." *Hayes*, 725 F.3d at 358; *see also Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 484 (3d Cir. 2018) (explaining that to determine numerosity, "a court must be presented with evidence that would enable the court to do so without resorting to mere speculation").  In *Hayes*, for example, the defendant provided data regarding a total number of transactions, and the class consisted of consumers related to some, but not all, of these transactions.  The trial court concluded that even if 5% of the transactions were for an item within the class definition, numerosity would be satisfied. *Hayes*, 725 F.3d at 353.  On appeal, the Third Circuit determined that the plaintiff "premised his argument for numerosity on improper speculation."  *Id.* at 357.  The Circuit explained that the only concrete evidence provided by the plaintiff was the maximum amount and that the plaintiff failed to provide facts demonstrating how this amount would be lowered.  The Circuit stated as follows:

> In short, the only conclusion that can be drawn from the evidence presented to the trial court is that the number of class members would be equal-to-or-less-than 3,500 and equal-to-or-greater than zero.  Within that range, we can only speculate as to the number of class members.

*Id.* at 357-58.  Accordingly, the *Mielo* court found that the plaintiff's evidence was insufficient to establish numerosity.  *Id.* at 358.

Here, the nationwide franchisee class and the state subclasses both suffer from the same shortcomings.  Plaintiffs admit that some franchisees did not pay incentives or bonuses, others

paid bonuses based purely on the number of returns filed, and some franchisees may not have entered into contracts with their tax preparers.  Thus, Plaintiffs concede "[t]hose franchisee tax-preparers simply are not class members."  Plfs. Br. at 15.  But Plaintiffs provide no information as to which or how many franchisees might not be included in the nationwide franchisee class or any of the subclasses.  Like in *Hayes,* Plaintiffs' lack of concrete information means that the Court would have to speculate as to the number of members in the proposed classes.  Accordingly, Plaintiffs fail to establish numerosity for the nationwide franchisee and state subclasses.  Because Plaintiffs do not establish numerosity, the Court cannot certify these classes.  *See Marcus*, 687 F.3d at 591 ("The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." (citing *Hydrogen Peroxide*, 552 F.3d at 307)).  Consequently, Defendants' motion is granted on these grounds and Plaintiffs' cross-motion is denied.

Turning to the nationwide TSA class, Plaintiffs provide sufficient evidence of the number of tax returns prepared at a TSA location for the years at issue.  Plfs. Reply, Ex. 3.  Moreover, Plaintiffs plead that all TSA tax preparers were presented with a commission-based compensation plan.  TAC ¶ 75.  Although Defendants maintain that the plans were not identical, they do not challenge the contention that all TSA employees had contracts that provided for some form of commission-based incentive.  Thus, unlike for the franchisee classes, Plaintiffs are not asking the Court to speculate as to the number of class members.  Plaintiffs, therefore, establish numerosity for the nationwide TSA class.  The Court turns to the remaining Rule 23(a) factors for the nationwide TSA class only.

### 2. Commonality

"Rule 23(a)(2) requires Plaintiffs to demonstrate that 'there are questions of law or fact common to the class.'" *Mielo*, 897 F.3d at 487 (quoting Fed. R. Civ. P. 23(a)(2)).  However, Rule 23(a)(2)'s "language is easy to misread, since any competently crafted class complaint literally raises common questions." *Id.* at 487 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (internal quotation omitted)).  "A complaint's mere recital of questions that happen to be shared by class members" is insufficient; instead, "'[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury.'" *Id.* (alterations in original) (quoting *Dukes*, 564 U.S. at 349-50) (internal quotation omitted).  "What matters . . . is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (citation omitted).  In other words, Plaintiffs' claims "must depend upon a common contention" whereby "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  In analyzing commonality, a court must focus on whether a defendant's conduct is common as to all class members. *Reyes v. Netdeposit, LLC*, 802 F. 3d 469, 486 (3d Cir. 2015).

Plaintiffs maintain that this matter presents two "simple common questions: . . . did the Promotion lower tax preparers pay?" and "did the tax-preparer's contract provide that such a deduction could be made?" Plfs. Br. at 10.  Defendants counter that the lack of an identical contract among putative class members defeats commonality.  Defs. Reply at 29.  "As long as all putative class members were subjected to the same harmful conduct by the defendant, Rule 23(a) will endure many legal and factual differences among the putative class members." *In re Community Bank of N. Va. Mortg. Lending Practices Litig., PNC Bank NA*, 795 F.3d 380, 397 (3d Cir. 2015).

Consequently, the lack of an identical contract is not detrimental here.  Even with differences in class members' contracts, common questions exist.  For example, whether the Promotion lowered class members' pay and whether this lowered pay was in violation of class members' employment contracts?  Defendants do not point to any evidence as to why this inquiry cannot be answered on a classwide basis.  Consequently, the Court concludes that Plaintiffs sufficiently demonstrate commonality.

### 3.  Typicality

"[T]ypicality demands that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'"  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 185 (3d Cir. 2001), *as amended* (Oct. 16, 2001) (quoting Fed. R. Civ. P. 23(a)(3)).  In other words, a lead plaintiff's claims must be "comparably central" to the claims of the absent parties.  *Id.* at 183.  This ensures that "the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'"  *Id.* at 182-83 (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998)).

The typicality requirement is "intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees."  *Id.* at 183.  However, all class members are not required to share identical factual circumstances – the requirement only mandates that a named plaintiff's individual circumstances cannot be "markedly different" from the other class members.  *Id.*  "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences."  *Id.* at 183-84.  For example, "a claim framed as a violative practice can support a class action embracing a variety of injuries so long as those injuries can all be linked to the practice."  *Id.* at 184 (citing *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 63 (3d Cir. 1994)).

The Third Circuit has reasoned that the typicality requirement "does not mandate that all putative class members share identical claims, because even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Id.* (internal quotations and citations omitted).

For those Plaintiffs who were employed by TSA, their claims are typical of other putative TSA tax preparers class members. Plaintiffs have TSA contracts that provided for incentive-based compensation and contend that Defendants' Promotion lowered their incentive pay and unjustly enriched Defendants. Moreover, Defendants fail to identify any unique defenses or issues that would make Plaintiffs' claim atypical from other TSA tax preparer class members. Although the contracts will be different, this is not fatal to Plaintiffs' typicality argument because the ultimate inquiry is if the Promotion adversely impacted class members' incentive pay. Critically, Plaintiffs allege that all contracts included a revenue-based incentive plan, and Defendants do not identify any markedly different terms amongst the TSA contracts. *See, e.g.*, *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) ("Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."). Therefore, the Court concludes that Plaintiffs establish typicality.

### 4. Adequacy

In reviewing the adequacy element, a court must decide whether the class representative "has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Sapir v. Averback*, No. 14-07331, 2015 WL 858283, at *3 (D.N.J.

Feb. 26, 2015) (citing *Falcon*, 457 U.S. at 157 n.13).  "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975).  The "linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F. 3d 170, 183 (3d Cir. 2015).  Adequacy functions as a "catch-all requirement" that "tend[s] to merge with the commonality and typicality criteria of Rule 23(a)." *Newton*, 259 F.3d at 185 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).  "Whether a party adequately represents a class depends on all the circumstances of the particular case." *Wetzel*, 508 F.2d 247.

Plaintiffs argue that their interests and incentives align with the putative class members, and that they have obtained adequate class counsel in this matter.  Plfs. Br. at 12-13.  Defendants fail to meaningfully challenge Plaintiffs' arguments.  Further, the Court cannot identify any reason why the named Plaintiffs or class counsel are inadequate.  Therefore, the Court determines that Plaintiffs appropriately demonstrate adequacy.

In sum, Plaintiffs satisfies the Rule 23(a) requirements for the nationwide TSA class.

### B.  Rule 23(b) Requirements

As discussed, Plaintiffs seek to certify their nationwide TSA tax preparers class pursuant to Rule 23(b)(3).  The requirements for Rule 23(b)(3) class certification are that "the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy."  *Dukes*, 564 U.S. at 362 (emphases added) (citing Fed. R. Civ. P. 23(b)(3)).  These are commonly referred to as the "predominance" and "superiority" requirements.

*Id.* The Third Circuit has also recognized that "[a] plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015).

> In conducting a predominance and superiority inquiry, the following factors are relevant:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

### 1. Predominance

The predominance requirement is "a 'far more demanding' standard than the commonality requirement of Rule 23(a)." *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018) (quoting *Amchem Prods.*, 521 U.S. at 624). It "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). "Predominance turns on the 'nature of the evidence' and whether 'proof of the essential elements of the cause of action requires individual treatment.'" *Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314, 319 (3d Cir. 2016) (quoting *Hydrogen Peroxide*, 552 F.3d at 311).

"At the class certification stage, the predominance requirement is met only if the district court is convinced that 'the essential elements of the claims brought by a putative class are capable of proof at trial through evidence that is common to the class rather than individual to its

members.'"  *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018) (quoting *Gonzalez*, 885 F.3d at 195).  To assess this requirement, district courts "*must look first to the elements of the plaintiffs' underlying claims* and then, 'through the prism' of Rule 23, undertake a 'rigorous assessment of the available evidence and the method or methods by which [the] plaintiffs propose to use the evidence to prove' those elements."  *Id.* at 128 (emphasis added) (quoting *Marcus*, 687 F.3d at 600).  As noted, Plaintiffs assert the following claims for the nationwide TSA tax preparers class: (1) breach of contract; and (2) unjust enrichment.  The Court reviews each claim separately.

### a.  Breach of Contract

Defendants focus on the predominance inquiry.  Defendants stress that there is not a common contract, which will lead to numerous individualized issues such as whether a class member had a contract, whether the contract provided for incentive pay, whether the class member was entitled to incentive pay based on his or her performance, and whether incentive pay was improperly calculated.  Defendants contend that these individual issues predominate.  Defs. Br. at 20-25.  Unlike the franchisee classes, Plaintiffs plead that every TSA tax preparer had a contract that provided for a commission based on revenues.  TAC ¶ 75.  Although Defendants establish that the terms of these contracts varied, the difference appears to be the amount of commission that the tax preparer may have been entitled to receive.  Ream. Decl. ¶¶ 6-9, D.E. 208-3.  Critically, Defendants do not contest Plaintiffs' allegation that every TSA tax preparer had a contract and do not argue that TSA provided anything other than commission-based incentive pay.  Accordingly, it appears that many of Defendants' hypothetical individualized issues are not supported by the evidence.

Plaintiffs, however, do not explain which state's law applies to their breach of contract claim.  And it appears that numerous states' laws are implicated.  For this reason, Plaintiffs fail to

meet their burden of establishing predominance for the TSA nationwide class.  *See Gray v. Bayer Corp.*, No. 08-4716, 2011 WL 2975768, at *7 (D.N.J. July 21, 2011) (emphasis added) (explaining that it is the "*plaintiff's burden to 'credibly demonstrate, through an extensive analysis of state law variances*, that class certification does not present insuperable obstacles.'" (quoting *Amchem Prods.*, 521 U.S. at 623)).  This is the same shortcoming that the Court reviews as to Plaintiffs' claim for unjust enrichment.

Plaintiffs contend that as to the various contracts at issue, there are only "minor variances with regard to specific terms," Plfs. Br. at 16, (*i.e.*, the amount of the incentive pay) but that these differences do not create individualized issues that defeat predominance.  Plaintiffs also contend that these "minor variances" largely impact damages, and individualized damages issues do not defeat predominance.  Plfs. Br. at 16.  Although individualized damages issues do not necessarily defeat predominance, there must still be common questions as to liability.  *See In re Suboxone (Buprehorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264, 272 (3d Cir. 2020).

At a minimum, Plaintiffs have not sufficiently demonstrated that the differences are limited to damages.  For example, in some of the sample TSA plans for 2014, there is apparently no express guidance as to how the Promotion was factored into the revenues used calculate tax preparers' commissions.  *See, e.g.*, Plfs. Br., Ex. 2 at 2.  For these contracts, it is not clear how, or to what extent, the Promotion impacted the commission calculation.  The 2015 and 2016 sample plans and another 2014 plan provide that "[t]he Company *plans* to utilize the following guidelines when calculating the amount of incentive compensation" and that "Net Revenues are *generally* calculated by taking the total fees received by TSA from your preparation" but that "discounts (including the $50 Gift Program)" would be subtracted.  *Id.* at 7, 9, 11 (emphases added).  Plaintiffs do not adequately explain how this issue can be resolved on a classwide basis.  And this

inquiry will likely implicate the first deficiency – the application of the law from various states. *See Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 468 (D.N.J. 2009) (noting that "state common law breach of contract claims vary with respect to statutes of limitations, parol evidence and burdens of proof" and that these differences defeated predominance).

Consequently, Plaintiffs fail to establish predominance for the TSA nationwide class.

### b. Unjust Enrichment

Defendants argue that variations in state law defeat predominance for Plaintiffs' unjust enrichment claim. *See* Defs. Reply at 17-18. Plaintiffs counter that there is no significant difference in unjust enrichment law from state to state and that "[i]t is a very simple, universal claim that is easy to apply." Plfs. Br. at 18. "[V]ariations in the rights and remedies available to injured class members under the various laws of the fifty states [does] not defeat commonality and predominance." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 301 (3d Cir. 2011). When a court is presented with a nationwide class, however, the different state laws must fall "into a limited number of predictable patterns." *Id.* To determine if that is the case, a court must examine the elements of the underlying causes of action. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 370 (3d Cir. 2015). Again, it is the "*plaintiff's burden to 'credibly demonstrate, through an extensive analysis of state law variances*, that class certification does not present insuperable obstacles.'" *Gray*, 2011 WL 2975768, at *7 (emphasis added) (quoting *Amchem Prods.*, 521 U.S. at 623). Plaintiffs' cursory argument that their unjust enrichment claim is easy to apply is insufficient to meet their burden. Consequently, Plaintiffs' fail to establish that common issue predominate for their unjust enrichment claim.

In sum, Plaintiffs do not meet their burden of establishing predominance for the breach of contract and unjust enrichment claims.

16

### 2. Superiority and Ascertainability

Because Plaintiffs do not meet their burden as to predominance, the Court need not address superiority or ascertainability, and the Court will not certify the nationwide TSA tax preparers class.

## IV.    CONCLUSION

For the reasons stated above, and for good cause shown, Defendants' motion to deny class certification, D.E. 208, is **GRANTED** and Plaintiffs' cross-motion for class certification, D.E. 211, is **DENIED without prejudice**.  An appropriate Order accompanies this Opinion.

Dated:  April 27, 2021

_____
John Michael Vazquez, U.S.D.J.